# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

COMMONWEALTH *vs.* MARK GOMES.

No. 99-P-725.

Bristol. November 9, 2000. - February 21, 2002.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Identification. Due Process of Law,* Identification.

At a criminal trial, the judge's questioning of a witness to clarify the witness's testimony and to make sure the jury also understood her testimony, which led the witness to make an in-court identification of the defendant as her assailant, was not error, where defense counsel thoroughly cross-examined the witness with regard to her in-court identification of the defendant, and the judge instructed the jury on the issue of suggestive one-on-one identification; furthermore, even if the judge's questioning of the witness was error, it did not create a substantial risk of a miscarriage of justice in light of the overwhelming evidence against the defendant. [6-7]

INDICTMENTS found and returned in the Superior Court Department on October 26, 1994.

The cases were tried before *Robert W. Banks,* J.

*Steven J. Rappaport* for the defendant.

*Daniel J. McColgan*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On October 26, 1994, a Bristol County grand jury returned a series of indictments against the defendant charging him with five counts of aggravated rape, five counts of kidnapping, five counts of unlawful possession of an electrical weapon (stun gun), three counts of assault and battery with a dangerous weapon, two counts of assault and battery, one count of armed robbery, and one count of armed assault with intent to rob. The indictments named five women as victims.[1] Among the victims were two women, Sarah and Melinda.[2]

On August 9, 1996, after a jury trial on all the charges, the defendant was found guilty on all the indictments relating to Sarah and on two indictments relating to Melinda, namely, unlawful possession of an electrical weapon and assault by means of a dangerous weapon.[3] The jury returned not guilty verdicts on the rest of the counts.

On appeal, the defendant claims that the trial judge improperly questioned Sarah with the result that she made an unnecessarily suggestive in-court identification of the defendant as her assailant.

*Facts.* All five complainants were prostitutes in New Bedford during 1993 and 1994. The money they received was used to purchase cocaine or heroin.

The Commonwealth's evidence at trial revealed that the assailant's modus operandi was similar in each of the attacks on the complainants. The assailant picked up the complainants on Purchase Street or a nearby street. He drove a sports car, identified by Sarah and Melinda as being a Nissan 300ZX. The license plate number was either 802ZLX, or 803ZLZ. The assailant drove the complainants to a remote area (Tabor Mills area), displayed a stun gun, and forced them to have sex with him. He then refused to pay them.

1. *The lineup.* The defendant was arrested on June 14, 1994,

---

[1]The defendant was also charged with similar indictments against a sixth victim. Those charges were the subject of a nolle prosequi prior to trial.

[2]We use pseudonyms in place of the actual names.

[3]The judge had allowed the defendant's motion for a required finding of not guilty in regard to the other indictments naming Melinda as the complainant.

and the trial began on August 26, 1996. Prior to the trial, none of the complainants had viewed a lineup, or a photographic array, or otherwise had identified the defendant as the assailant. In order to remedy the situation of not having had a prior identification procedure, the Commonwealth decided to have all of the complainants view a lineup outside the courtroom on the first morning of the trial.

The lineup consisted of six men, including the defendant. All of the complainants viewed the lineup but only one of the complainants identified the defendant as the assailant.[4]

2. *Questioning of Sarah by the judge.* Sarah was the first Commonwealth witness. She had viewed the lineup that morning through a window but had not identified the defendant as her assailant. Rather, she had informed the prosecutor that another man in the lineup looked familiar because of his height and build.

During the direct examination of Sarah, the prosecutor showed her a photograph of the lineup. The defendant was number four in the lineup. The following exchange then took place:

> PROSECUTOR: "What person did you — do you see in that picture that reminds you most of the person you saw that morning in the car?"
>
> WITNESS: "*Right now, or when I was looking through the window?*" (emphasis added).
>
> PROSECUTOR: "When you were looking through the window."
>
> WITNESS: "The one in the middle, #3."

At the conclusion of the cross-examination, the judge proceeded to ask Sarah several questions that led to an in-court identification of the defendant by Sarah. The judge's questions and Sarah's answers are as follows:

> JUDGE: "One question. You participated in a lineup this morning. Did you pick anybody out of that lineup?"

---

[4] The jury returned not guilty verdicts on the indictments that had named the identifying witness as the complainant.

WITNESS: "Yes, I did. With hesitation —"

JUDGE: "Just [did you] pick someone out of the lineup?"

WITNESS: "Yes, I did."

JUDGE: "Do you see that person here in court today?"

WITNESS: "No, I don't."

JUDGE: "Do you see the person in court here today who was with you on the night that you described to us?"

WITNESS: "Do I see the person?"

JUDGE: "Can you recognize anyone in court?"

WITNESS: "Now that I see the person in front of me, I can recognize him. I seen [*sic*] him walking by me in the hallway, and I recognized him, and it came to me, but it's because I pieced everything together after a long time."

JUDGE: "What's your answer to my question?"

WITNESS: "Do I recognize him now?"

JUDGE: "Do you recognize anybody in this courtroom today who was with you that night?"

WITNESS: "Yes."

JUDGE: "Where is that person?"

WITNESS: "That person's sitting right over there sitting next to the defense attorney."

On recross-examination, Sarah admitted that she had not identified the defendant in the lineup as her assailant, but instead had selected another person. Defense counsel then asked Sarah the following question, "Now that this trial has begun and you see my client sitting next to me, and nobody else from that lineup in the courtroom, now you say that you're picking out my client; is that it?" to which Sarah responded, "Well, it joggles the memory when you put the situation together."

The defendant argues that the trial judge's questioning

exceeded the bounds of judicial interaction with a witness that led to a highly suggestive, and thus unreliable, in-court identification. The Commonwealth argues that the witness's response during direct examination (which we emphasized earlier in the opinion) indicated that her lack of identification of the defendant in the lineup that morning may have since changed, and that the trial judge decided to intervene to clarify the witness's identification testimony.

The defendant did not object at trial to the questioning by the trial judge and therefore has waived this issue for appeal.[5] As such, any error by the trial judge will only be examined for whether it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Dupont*, 2 Mass. App. Ct. 566, 571 (1974); *Commonwealth* v. *Johnson*, 46 Mass. App. Ct. 398, 402 (1999).

We recognize that "the effect on the jury of whatever a judge says or does may be significant," *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 846 (1980), "and therefore a judge should use restraint in interrogating witnesses." *Commonwealth* v. *Marangiello*, 410 Mass. 452, 461 (1991). However, "there may be occasions in which a trial judge quite appropriately asks questions to clarify a point, to prevent perjury, or to develop trustworthy testimony." *Commonwealth* v. *Fitzgerald, supra* at 847. See *Commonwealth* v. *Festa*, 369 Mass. 419, 423 (1976). Such an occasion was presented here.

Before the judge questioned Sarah, the prosecutor showed the photograph of the lineup to Sarah and asked her if she saw the person in the photograph that reminded her of her assailant. Sarah's response, "*Right now*, or when I was looking through the window? (emphasis added)," was sufficient to alert the judge of the need to clarify Sarah's identification testimony. *Commonwealth* v. *Marangiello, supra* at 461. Thus, it appears that the judge's motive in questioning Sarah was to clarify her

[5]Appellate counsel argues that defense counsel could not object because the colloquy with the witness took place in the presence of the jury. "While we understand the natural reluctance of trial counsel to object to questions or comments coming from a judge, sometimes trial counsel's duty to protect his client's rights requires him to object, preferably at the bench out of the jury's hearing." *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 846 (1980), citing *Commonwealth* v. *Fiore*, 364 Mass. 819, 826 & n.1 (1974).

testimony and to make sure that the jury also understood her testimony. See *United States* v. *Godel*, 361 F.2d 21, 24 (4th Cir. 1966). These are appropriate reasons for a judge to question a witness.

We recognize that the judge's questioning of Sarah led her to make an in-court identification of the defendant as her assailant. Any such identification "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Commonwealth* v. *Jones*, 375 Mass. 349, 357 (1978), quoting from *Baker* v. *Hocker*, 496 F.2d 615, 617 (9th Cir. 1974).

After the judge questioned Sarah, defense counsel conducted a thorough cross-examination about her in-court identification of the defendant. Thus, "[t]he jury were in a position to make an informed assessment of whether the identification[] [was] right or wrong . . . ." *Commonwealth* v. *Odware*, 429 Mass. 231, 236 (1999). Furthermore, the judge, in his final instructions to the jury, addressed the issue of a suggestive one-on-one identification such as the one Sarah made in the courtroom. More specifically, the judge instructed the jury that in considering a witness's identification, "[y]ou may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

"The degree of suggestiveness present in this identification went to the weight, not the admissibility, of this evidence and it is for the jury to assess the infirmities of this identification." *Commonwealth* v. *Melvin*, 399 Mass. 201, 208 (1987). In the circumstances, there was no error. However, we urge trial judges to exercise restraint in questioning witnesses.

Even if the judge's questioning of the witness was error, it did not create a substantial risk of a miscarriage of justice. Notwithstanding the not guilty verdicts on some of the indictments, the evidence against the defendant was overwhelming. The vehicle he owned matched the description of the assailant's vehicle. The license plate number was remarkably similar. When questioned by the police, the defendant told them that he picked up three prostitutes on Purchase Street at various times and

drove them to the Tabor Mills area. The defendant admitted that he owned a stun gun (which the jury could reasonably infer was not a common device for owners of motor vehicles to have in their possession), and also that he showed the device to the prostitutes to scare them.[6] Therefore, even if we assume that the judge's questioning of Sarah was error, "we are persuaded that it did not 'materially influence[]' the guilty verdict." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

*Judgments affirmed.*

---

[6]At the trial, the defendant testified that he had owned a stun gun but that he had discarded it before the events took place for which he was indicted. He denied that he told the police that he had used the stun gun on anyone or that he had used it to scare anyone. He also denied that he ever picked up any of the five women complainants.