COMMONWEALTH *vs.* ROBERT G. NEWELL.

No. 99-P-1564.

Plymouth. May 9, 2001. - June 11, 2002.

Present: GREENBERG, SMITH, & MASON, JJ.

*Robbery. Assault and Battery by Means of a Dangerous Weapon. Evidence,* Hearsay, Spontaneous utterance. *Practice, Criminal,* Hearsay, Required finding, Assistance of counsel, Argument by prosecutor, Instructions to jury. *Constitutional Law,* Assistance of counsel.

At the trial of indictments charging armed robbery and assault and battery by means of a dangerous weapon, the judge erred in admitting in evidence the victim's conversations with a police officer and with his supervisor on the ground that the conversations were admissible under the spontaneous utterance exception to the hearsay rule, where the deliberate omissions from the victim's statements demonstrated that the victim was not under the influence of the exciting event at the time he made the statements; however, the error was not prejudicial, where the statements did not name the defendant or otherwise identify him in any way as the victim's assailant, and where the statements were not the only evidence of an essential element of the crime of armed robbery, namely, the taking of money which could be the subject of larceny. [122-124]

At the trial of indictments charging armed robbery and assault and battery by means of a dangerous weapon, the judge did not err in denying the defendant's motion for a required finding of not guilty on the ground that the defendant's fingerprint found on a telephone was the only evidence linking him to the crimes, where the victim's identification of the defendant as his assailant at a probable cause hearing was admissible as substantive evidence in light of the victim's later recantation and failure to identify the defendant at trial. [125-127]

Counsel for a criminal defendant charged with armed robbery and assault and battery did not provide ineffective assistance at trial, where counsel's failure to object to the admission in evidence of a photographic array was a strategic choice that was not manifestly unreasonable; where, even assuming that it was error for counsel not to object to the use of the word "robbed" during the trial, there was no substantial risk of a miscarriage of justice in view of the judge's clear instructions to the jury that they were the sole finders of fact and that only they could determine whether the crimes had occurred; and where counsel's failure to request an instruction that the defendant's fingerprint could not be used as the sole evidence to convict him was a strategic choice, given that the fingerprint evidence was harmful to the defendant and a particular instruction would have highlighted it for the jury. [127-130]

During his closing argument at a criminal trial, the prosecutor did not make improper statements in referring to the defendant's medical records, where the prosecutor was properly arguing facts that were part of the record; moreover, the prosecutor did not misrepresent the evidence in using the plural "fingerprints," where the prosecutor clarified his remark by reminding the jury that two fingerprints had been found but that only one could positively identify the defendant. [130-131]

The judge at a criminal trial did not err in instructing the jury regarding the use of circumstantial evidence. [131]

INDICTMENTS found and returned in the Superior Court Department on March 12, 1999.

The cases were tried before *Charles J. Hely,* J.

*Maxine Sushelsky* for the defendant.

*Christina L. Crowley,* Assistant District Attorney, for the Commonwealth.

SMITH, J. A Superior Court jury convicted the defendant of armed robbery and assault and battery by means of a dangerous weapon. On appeal, the defendant claims that the trial judge committed error by (1) allowing in evidence the victim's hearsay statement pursuant to the spontaneous utterance exception, (2) denying the defendant's motion for a required finding of not guilty, and (3) failing to instruct properly the jury in regard to circumstantial evidence. The defendant also contends that the prosecutor made improper remarks in his closing argument. Finally, the defendant claims that he did not receive effective assistance of counsel during the trial.

*Facts.* We recite the evidence in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with the issues raised. On October 30, 1997, Steven Clayton was working as an attendant at a Citgo gasoline station in Plymouth. On that evening, he started work at 11:00 P.M., and was working alone. When Clayton was not responding to motorists' requests for gasoline, he remained in a small kiosk, in which there were items for sale, a credit card machine, a telephone, and a safe. While waiting on customers, Clayton tried to keep no more than $100 in his pocket; any amount over that was placed in the safe in the kiosk.

During that evening, Clayton noticed a man whom he had never seen before outside the kiosk, standing by a telephone

booth. It was a windy, cold night and the man looked cold. The man walked over to the kiosk and asked Clayton if he could use the telephone in the kiosk. The man explained that he had just run out of change and was trying to telephone someone to come and give him a ride home. Although Clayton had been instructed not to let anyone into the kiosk, he allowed the man to enter and use the telephone. Clayton frequently allowed people to enter the kiosk to use the telephone.

The man used the telephone a few times and then told Clayton that someone would pick him up shortly. The man had some beer with him and asked Clayton if he would like to have a beer. Clayton agreed and drank three or four beers with the man in the next hour. As a result, Clayton testified, he was "buzzing . . . a little." During that time, Clayton left the kiosk a few times to serve customers. At that time, he kept under $100 in his pocket. Clayton also put some money in the safe during this period.[1]

Sometime after midnight, the man asked Clayton, "Do you want to see something?" and pulled out a knife and held it to Clayton's neck. Clayton panicked and tried to grab the knife. At that point, Clayton testified, he "went blank." The next thing he remembered was hitting the silent alarm, and picking up the beer cans and throwing them into the trash can. Clayton's thumb was cut and bleeding from attempting to grab the knife, he had been punched several times in the face, and his eye was injured such that he could not open it. Clayton later described his assailant to the police as a dark-skinned white male, about five feet, nine inches in height, medium build, not particularly handsome, with dark hair. At the trial, Clayton was asked if the defendant was the person who robbed him. Clayton stated that he was not certain that the defendant was the robber.

A fingerprint expert testified that he discovered a print from

---

[1]John Taylor, who also worked at the gasoline station but on a different shift, came into the kiosk on the evening of October 30 to buy some cigarettes while Clayton was talking with another person.

Taylor was called as a witness by the defendant. When asked if the defendant was the person who had been in the kiosk with Clayton, Taylor responded that the defendant was not that person. On cross-examination by the prosecutor, Taylor stated that he was not sure if the individual was the defendant.

the defendant's right ring finger on the telephone. He could not determine when the defendant's fingerprint had been left on the telephone.

1. *The spontaneous utterance issue.* Officer Robert Crowley of the Plymouth police department arrived at the gasoline station within one minute after Clayton sounded the alarm. Upon arrival, Crowley observed that Clayton was upset and shaken, had a towel around his bleeding hand, and that his eyes and lip were swollen. At the trial, Crowley was asked to relate his conversation with Clayton about the incident. The defendant objected on the ground that the testimony would be hearsay, but the judge overruled the objection, ruling that Clayton's statement to Crowley was admissible under the spontaneous utterance exception to the hearsay rule.

Crowley testified that Clayton told him that he had allowed a person to enter the kiosk to use the telephone. After using the telephone, the man pulled out a knife, reached inside Clayton's pocket and took approximately $100 from him. Clayton gave a description of the man, showed Crowley where the robbery took place, and stated that, after the struggle, the man pulled the telephone out of the wall and threw it on the floor. Crowley observed the telephone on the floor of the kiosk.

As Clayton and Crowley waited for an ambulance, Clayton telephoned his supervisor, John Colantuone, to take over his shift. When Colantuone arrived, he found Clayton to be shaken and disoriented, and he appeared to have been beaten. Over the defendant's objection, Colantuone was permitted to testify that Clayton told him that he had let a person into the kiosk, and that after he allowed him to use the telephone, the man took out a knife and he gave the man some of the money but not all of it. Colantuone testified that Clayton turned over the rest of the money to him. When Colantuone counted it, he found that $165 was missing. Colantuone also testified that the defendant had never worked at the gasoline station and that he had never seen the defendant prior to trial.

At the trial, Clayton admitted that he had not told Crowley or Colantuone that he had drunk some beer with his assailant for about one hour, and that after he had been attacked he had

disposed of the empty cans.[2] Clayton testified that the omissions were intentional because he did not want to get in trouble for drinking on the job.

Because the deliberate omissions from Clayton's statements to Crowley and Colantuone indicate that the statements lacked spontaneity, the defendant argues that it was error for the judge to allow those statements in evidence under the spontaneous utterance exception.

"Under the spontaneous exclamation exception to the hearsay rule, 'a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event.' " *Commonwealth* v. *Brown*, 413 Mass. 693, 695 (1992), quoting from *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978).

Although the evidence showed that Clayton made the statements to Crowley and Colantuone shortly after the incident, it is clear from his intentional omissions that he had sufficient time to think about the contents of his statements to them. Thus, the intentional omissions demonstrate that Clayton was not under the influence of the exciting event (the assault and robbery) at the time he made the statements. Therefore, Clayton's statements did not have sufficient indicia of reliability to allow them in evidence; they lacked the spontaneity that would have negated premeditation or possible fabrication. *Commonwealth* v. *Gilbert*, 423 Mass. 863, 871 (1996).

In so holding, we emphasize that we are not ruling that a spontaneous utterance must include *all* the details of the event which is the subject of the utterance. At times, the person making the utterance may inadvertently leave out some details.

[2]On August 11, 1998, Clayton was interviewed about the robbery by an agent from the Federal Bureau of Investigation. It was at this interview that Clayton mentioned for the first time that he had talked with his assailant for about an hour and had drunk some beer with him. During the interview, the agent asked Clayton to view a lineup of possible suspects. Clayton told the agent that he could not pick his assailant out of the lineup and would not know him if he saw him again. At that point, the interview took a bizarre turn. Clayton testified that the agent accused him of "covering up" and threatened him with seven years in jail. There was no explanation in the record as to why the Federal Bureau of Investigation was investigating the gasoline station robbery.

Here, however, Clayton *intentionally* omitted significant details and that is the reason for our holding.

We must now determine whether the error was prejudicial. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983) ("An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected' ").

Reversal is not required on this issue. Clayton's statements to Crowley and Colantuone did not name the defendant or otherwise identify him in any way as Clayton's assailant. Further, Clayton was vigorously cross-examined by defense counsel about his omissions in the statements to the two men. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 29 (1998) (where witness was available for cross-examination, erroneous admission of statements as spontaneous utterances did not require reversal).

The defendant, however, claims that Clayton's statements to the two men were not merely cumulative of his testimony but rather contained details that provided the sole evidence that a robbery had indeed taken place, pointing to Clayton's trial testimony that when his assailant put the knife to his throat, he tried to grab the knife and then he "went blank." Thus, the defendant argues that without Clayton's statements to Crowley and Colantuone, there was no evidence of an essential element of the crime of armed robbery, i.e., taking of "money or other property which may be the subject of larceny." G. L. c. 265, § 17.[3] Therefore, the defendant claims that we should dismiss the armed robbery charge for lack of evidence.

We reject the defendant's argument. Clayton's testimony at the trial coupled with Colantuone's testimony that $165 was missing was sufficient to send the case to the jury on the armed robbery charge.

---

[3]Both Crowley and Colantuone testified that Clayton told them that his assailant took money from him.

2. *Denial of motion for a required finding of not guilty.* The defendant claims error in the denial of his motion for a required finding of not guilty because, according to the defendant, his fingerprint found on the telephone was the sole evidence linking him to the crimes and, therefore, there was insufficient evidence to warrant a conviction on the charges.

In *Commonwealth* v. *Morris*, 422 Mass. 254, 257 (1996), the court stated, "Fingerprint evidence coupled with other evidence may rationally link a defendant to a crime. . . . Where, for example, there is evidence that a person touched an object, and it is later proved that the defendant's fingerprints were on that object, an inference that the defendant was present at the time of the touching is warranted. . . . If, however, the only identification evidence is the defendant's fingerprint at the crime scene, the prosecution must prove beyond a reasonable doubt that the fingerprint was placed there during the crime." (Citations omitted.) See *Commonwealth* v. *Fazzino*, 27 Mass. App. Ct. 485, 487 (1989) ("presence of a fingerprint at the scene of the crime is not by itself a sufficient basis for submitting a case to a jury. . . . The prosecution must couple the fingerprint[] with evidence which reasonably excludes the hypothesis that the fingerprint[] [was] impressed at a time other than when the crime was being committed").

The Commonwealth argues that although Clayton did not make an in-court identification of the defendant at the trial, he did identify the defendant as his assailant at the defendant's probable cause hearing. That identification, the Commonwealth contends, provided sufficient evidence to meet its burden of showing that the defendant's fingerprint was impressed on the telephone at the time the crimes were committed.

The probable cause hearing was held in August of 1998. At that hearing, Clayton positively identified the defendant as the person who assaulted him on October 30, 1997. At the defendant's trial, Clayton acknowledged that he had indeed made the identification at the hearing but that a few days after the hearing, he had telephoned both the prosecutor and defense counsel and informed them that he was no longer sure of his identification. The defendant states that Clayton's positive identification cannot be used as substantive evidence in

determining sufficiency of the evidence because Clayton subsequently recanted his positive identification.

In view of Clayton's subsequent recantation of the positive identification he had made at the probable cause hearing and his failure to make an in-court identification of the defendant at trial, we must determine whether Clayton's positive identification at the probable cause hearing was admissible for impeachment purposes only or whether it may be considered as substantive evidence. If we hold that it could be admitted as substantive evidence, then it will, when coupled with the fingerprint evidence, support the judge's denial of the defendant's motion for a required finding of not guilty.

In *Commonwealth* v. *Daye*, 393 Mass. 55, 73-74 (1984), where the witness at trial would not or could not identify the defendant, the court allowed the witness's prior inconsistent grand jury testimony concerning the witness's identification of the defendant to be admitted as substantive evidence. The court, however, stated that certain conditions must be met before such a prior inconsistent statement is admitted as substantive evidence. *Ibid.* See *Commonwealth* v. *Clements*, 436 Mass. 190, 192-193 (2002). The conditions are that (1) the witness can be effectively cross-examined at trial regarding the accuracy of the statement, and (2) the witness's statement must be that of the witness and not that of the interrogator, and not be coerced. *Commonwealth* v. *Daye*, 393 Mass. at 73-75. The court also stated that, apart from the above requirements for admissibility of the prior grand jury testimony as substantive evidence, when that testimony concerns an essential element of the crime, it is required that "the Commonwealth . . . offer at least some corroborative evidence if there is to be sufficient evidence to warrant a conviction." *Commonwealth* v. *Clements*, *supra* at 192-193, citing *Commonwealth* v. *Daye*, *supra* at 75. The rule announced in *Daye* "has been extended, with modification, to testimony at probable cause hearings. See *Commonwealth* v. *Sineiro*, 432 Mass. 735, 745 (2000) (when at trial witness falsely claims lack of memory, corroboration of witness's probable cause hearing testimony not required before such testimony may be admitted for substantive purposes; probable cause testimony differs from grand jury testimony in that it is given in

open court and subject to cross-examination)." *Commonwealth* v. *Clements*, 436 Mass. at 192 n.2.

Here, the conditions as set forth in *Daye* were met. At trial, Clayton admitted that he had made a positive identification of the defendant at the probable cause hearing. He was, of course, available at the trial to be cross-examined about the identification. Further, the evidence at trial showed that Clayton's identification of the defendant was not the result of leading questions by the prosecutor. Although Clayton's positive identification did not need to be corroborated because it was given at a probable cause hearing, see *Commonwealth* v. *Sineiro*, *supra* at 745, the fingerprint evidence does corroborate the identification.

Because the positive identification at the probable cause hearing may be treated as substantive evidence, the Commonwealth met its burden of showing, beyond a reasonable doubt, that the defendant's fingerprint was impressed on the telephone at the time of the crime. The fact that Clayton later recanted his testimony goes to the weight, not the admissibility of the positive identification. Therefore, the judge did not err in denying the defendant's motion for a required finding of not guilty.

3. *Ineffective assistance of counsel.* The defendant claims that his trial attorney was constitutionally ineffective for (1) failing to object to the introduction in evidence of the defendant's photograph and accompanying testimony, (2) failing to object to the use of the words "robber" and "robbery" during the course of the trial, and (3) failing to request a limiting instruction as to the proper use by the jury of the fingerprint evidence.

An ineffective assistance of counsel claim requires the defendant to show that counsel's performance displayed "serious incompetency, inefficiency, or inattention . . . behavior of counsel falling measurably below that . . . expected from an ordinary fallible lawyer — and, if . . . found, . . . [that such behavior] . . . likely deprived the defendant of an otherwise available, substantial ground of defen[s]e." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). With respect to the latter requirement, "there ought to be some showing that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

a. *Failure to object to photographic identification testimony and introduction of photograph.* The day after the October 30 incident, a police officer showed Clayton three or four books of photographs. The defendant's photograph was not in the books and Clayton did not identify any photograph as depicting his assailant. On November 22, 1997 (three weeks after the robbery), the officer showed Clayton an array of nine photographs, which included the defendant's photograph. Clayton testified that one photograph looked "very similar" to his assailant. Clayton, however, was not asked by the prosecutor at the trial to identify the photograph in the array which he had stated looked "very similar" to his assailant. Instead, the police officer testified and identified the photograph Clayton had selected as depicting the defendant. Defense counsel did not object to the testimony and further requested that the photographic array be admitted in evidence as an exhibit.

In *Commonwealth* v. *Seminara,* 20 Mass. App. Ct. 789 (1985), we held that it was error for the judge to allow in evidence a police officer's testimony that a witness had tentatively identified a photograph of the defendant and the admission in evidence of that photograph, where, at the trial, the witness, who did not make an in-court identification, was not asked whether the photograph admitted in evidence was the one she had earlier selected. *Id.* at 796, citing *Commonwealth* v. *Daye,* 393 Mass. at 61-63. Such evidence is impermissible hearsay.

Here, Clayton was not asked by the prosecutor which photograph he had selected. Therefore, without a proper foundation it was error to allow the officer to testify that Clayton had selected the defendant's photograph as being "similar" to his assailant.

The defendant argues that his trial counsel was ineffective in failing to object to the testimony and also because he took the affirmative step of having the photographic array placed in evidence as an exhibit. The Commonwealth claims, however, that trial counsel made a strategic choice not to object to the evidence.

"Trial tactics which may appear questionable from the vantage point of hindsight, do not amount to ineffective assistance unless 'manifestly unreasonable' when undertaken."

*Commonwealth* v. *Haley*, 413 Mass. 770, 777-778 (1992), quoting from *Commonwealth* v. *Sielicki*, 391 Mass. 377, 379 (1984). Although a claim of ineffective assistance of counsel often requires an evidentiary hearing on a motion for a new trial, it is not necessary in this matter because the trial record demonstrates that trial counsel's failure to object was a calculated strategy. See *Commonwealth* v. *North*, 52 Mass. App. Ct. 603, 614 (2001).

It is clear from the trial record that it was part of counsel's trial strategy not to object to the officer's testimony or the showing of the photographic array to the jury. That strategy was to blunt Clayton's identification of the defendant made some ten months after the October 30 incident by demonstrating that Clayton, some three weeks after the incident, was unable to make a positive identification of the defendant's photograph as depicting his assailant. Further, in his cross-examination of the police officer, trial counsel brought out several inconsistencies in Clayton's testimony in regard to the photographic identification procedure, attempting to attack Clayton's credibility.

We hold that trial counsel's trial tactics in this instance were not "manifestly unreasonable." *Commonwealth* v. *Haley*, 413 Mass. at 778.

b. *Failure to object to the use of the word "robbed."* On two occasions in his testimony, Clayton used the word "robbed," since a police officer used that word and the prosecutor also used the word "robbed" in a question to Clayton. Appellate counsel claims that trial counsel was ineffective in not objecting to the use of the word especially because one of the theories of the defense was that there was no robbery.

Assuming that it was error for trial counsel not to object, there was no substantial risk of a miscarriage of justice in view of the judge's clear instructions to the jury that they were the sole finders of fact and that only they could determine whether the crimes had occurred.[4]

c. *Failure to request limiting instruction as to the fingerprint*

---

[4]Appellate counsel also claims that Clayton's medical records contain a reference to Clayton having been robbed and, therefore, trial counsel was ineffective for not requesting that the records be sanitized. In one part of the records, there is a notation as to the reported cause of Clayton's injuries. Such a

*evidence*. The defendant claims that his trial counsel was ineffective for not requesting an instruction that the defendant's fingerprint could not be used as the sole evidence to convict him, absent evidence that the fingerprint was made at the time of the commission of the crimes on October 30.

Trial counsel's failure to request a fingerprint instruction was a strategic choice where the fingerprint was harmful to the defendant and "a particular instruction would have highlighted it for the jury." *Commonwealth* v. *Harbin*, 435 Mass. 654, 659 (2002). Further, the evidence at trial, in particular, the positive identification at the probable cause hearing, was sufficient to support an inference that the defendant's fingerprint was placed on the telephone during the commission of the crime.

4. *Claimed errors in prosecutor's closing argument.* The defendant argues that the prosecutor made improper statements in his closing argument when he referred to hearsay in Clayton's medical records to establish the offense of robbery and when he misrepresented fingerprint evidence. Because the defendant did not object to the prosecutor's argument at trial, we review only to determine whether the alleged errors, if any, created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Marangiello*, 410 Mass. 452, 465 (1991).

Remarks made during closing argument are viewed in the context of the entire argument, and "in light of the judge's instruction to the jury and the evidence at trial" (citation omitted). *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). "Counsel has the right to argue inferences from the evidence favorable to his case, and the precise form should not control unless it tends to lead the jury to an improper inference not from the evidence but from the apparent personal knowledge of the attorney." *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 315 (1973).

Here, when the prosecutor referred to statements in Clayton's medical records, he was properly arguing facts which were part of the record. See *Commonwealth* v. *DiMonte*, 427 Mass. 233, 242 (1998).

reference should have been redacted, but there is no substantial risk of a miscarriage of justice in view of the judge's instructions to the jury that they were the sole finders of fact. The other reference was merely cumulative of the first part.

Regarding the fingerprint evidence, the prosecutor clarified his use of the plural "fingerprints" by reminding the jury that two prints had been found but only one could positively identify the defendant. Further, this issue had been thoroughly and fully explored in the direct examination of the fingerprint expert. There was no improper argument.

5. *Jury instructions.* The defendant argues that the judge erred in his circumstantial evidence instruction to the jury because he failed to inform them that in using circumstantial evidence, proof must still be beyond a reasonable doubt. As the defendant made no objection at trial to the jury instructions, the question is whether the jury instructions created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967).

Trial judges are accorded considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration. *Bouley* v. *Reisman,* 38 Mass. App. Ct. 118, 121 (1995). Under Massachusetts law, appellate courts "evaluate the charge as a whole, looking for what meaning a reasonable juror could put to the words of the trial judge." *Commonwealth* v. *Waite,* 422 Mass. 792, 804 (1996).

Here, the trial judge advised the jury of the presumption of innocence and the Commonwealth's burden of proof beyond a reasonable doubt. He also explained circumstantial evidence and the jury's right to draw inferences. The instructions regarding circumstantial evidence "were adequately balanced with instructions about the necessity that such evidence persuade the jury beyond a reasonable doubt and that inferences drawn from circumstantial evidence are subject to the reasonable doubt standard." *Commonwealth* v. *Meuse,* 10 Mass. App. Ct. 937, 937 (1980).

*Judgments affirmed.*