Following a jury trial, the defendant was convicted of reckless endangerment of a child in violation of G. L. c. 265, § 13L. On appeal, the defendant claims the evidence was insufficient to support her conviction and that the judge improperly instructed the jury as to the elements of the offense. We affirm.
1. Sufficiency of the evidence. The defendant claims that the Commonwealth failed to introduce evidence sufficient to support a conviction under G. L. c. 265, § 13L. We disagree. In reviewing the sufficiency of the evidence, this court views the evidence in the light most favorable to the Commonwealth with specific reference to the substantive elements of the offense. See Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979) ; Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). Here, to prove reckless endangerment of a child, the Commonwealth must prove the following elements: "(1) a child under age eighteen, (2) a substantial risk of serious bodily injury or sexual abuse, and (3) the defendant wantonly or recklessly (i) engaged in conduct that created the substantial risk, or (ii) failed to take reasonable steps to alleviate that risk where a duty to act exists." Commonwealth v. Coggeshall, 473 Mass. 665, 667-668 (2016).
To prove that a defendant acted "wantonly or recklessly" with regard to the substantial risk, the Commonwealth must show the defendant was "actually aware of the risk." Id. at 670. The defendant claims that she did not have actual awareness of a substantial risk because the victim, her daughter, recanted her story multiple times. We disagree.
In the light most favorable to the Commonwealth, the jury could have found the following. On March 18, 2013, the victim told the defendant a detailed account of multiple incidents of her stepfather's sexual abuse of her over the prior two years. The victim explained that, in exchange for things she wanted, the stepfather "would have [her] give him BJ's" and that he would physically touch her body. When the stepfather returned home that evening, the three of them discussed the allegations, which the stepfather denied. The stepfather packed a bag in preparation to leave. He then brought the victim away from the living room, where the defendant remained, out to the back porch and spoke with the victim privately.[2] When they returned inside, the victim recanted her story to the defendant. The stepfather left and stayed in a hotel overnight, the victim accompanying him because the defendant was yelling and "we were scared that she was going to do something."
After the victim's initial allegations in March of 2013, the defendant continued to allow the stepfather to spend time alone with the victim. During this time, the abuse continued. On November 16, 2013, the victim again told the defendant about the abuse, as well as her reason for recanting: the stepfather had threatened he would kill himself rather than go to jail. That day, the stepfather admitted to the defendant that he had asked the victim to perform a sexual act on him.[3] At that point, the victim began living with other family members[4] and reported the abuse to the police on November 17, 2013.
Given both the victim's and stepfather's statements to the defendant, the evidence properly could be viewed to establish that the defendant was actually aware of a substantial risk of sexual abuse occurring. Even if the jury credited the defendant's testimony that she doubted the victim's allegations, it would have been reasonable to infer that the doubt caused by the victim's recantation did not displace her awareness. Further, the defendant's conduct in the face of such a risk could be found to "constitute [ ] a gross deviation from the standard of conduct that a reasonable person would observe in the situation." G. L. c. 265, § 13L, inserted by St. 2002, c. 322, § 2. See Commonwealth v. Coggeshell, supra at 669. The evidence properly supported the defendant's conviction.[5]
2. Jury instruction. The defendant also claims the judge erred in failing to provide an instruction to the jury on the elements of indecent assault and battery, which is included as a theory of proving sexual abuse under reckless endangerment of a child, along with "rape, either statutory or forced." We disagree. A judge has considerable discretion in crafting jury instructions, "both in determining the precise phraseology used and the appropriate degree of elaboration." Commonwealth v. Newell, 55 Mass. App. Ct. 119, 131 (2002). Because defense counsel did not request such an instruction and did not object to the instruction given,[6] we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967) ; Commonwealth v. Figueroa, 83 Mass. App. Ct. 251, 263-264 (2013).
The defendant invites us to speculate that a risk of a miscarriage of justice arose because the jury could have disbelieved the victim's testimony regarding the physical touching and nonetheless reached their verdict on a theory that the stepfather's sexual statements alone constituted sexual abuse. We decline the invitation. The jury were free to make credibility assessments of the testifying witnesses, including the victim in this case, and find guilt under either theory of sexual abuse. Further, the given instruction substantially conformed to the model jury instruction for reckless endangerment of a child under eighteen except for the judge not reading the elements of either applicable sexual abuse charge. This portion of the model jury instruction is couched in suggestive language, and no case mandates that a judge provide such an instruction. Although doing so would have been a better practice, given the weight of the evidence at trial and the jury's apparent crediting of the victim's testimony, it is not plausible that but for the instruction given the verdict would have been different. See Commonwealth v. Roderiques, 462 Mass. 415, 426-427 (2012).
Judgment affirmed.

During this conversation the stepfather told the victim that she "needed to tell [the defendant] everything [the victim] said to her wasn't true or he would kill himself before he went to jail."

State Police Sergeant Carol Zullo testified that the stepfather told the defendant he said to the victim, "[Y]ou are not getting the fucking dog even if you blew me twice." Suzanne Namislo, of the Department of Children and Families, testified that the stepfather's statement was, "[I]f you flash me, I will give you a dog." To the extent there was conflict in the testimony on this point, it was the jury's responsibility to resolve it. See Jackson v. Virginia, 443 U.S. at 319.

The record suggests that the defendant brought the victim to stay at her sister's house that evening because she did not believe the victim's allegations, and not out of a concern for the victim's safety. According to the victim's testimony, the defendant said that "she [didn't] know if she [could] believe it because [the victim had] said this before and that [the defendant] would find [the victim] somewhere to stay for the night." Sergeant Zullo testified that the victim left voluntarily because she did not want to cause the stepfather to leave and "break up the family." The jury could infer from the testimony that the defendant did not anticipate this arrangement would be long-term when she brought the victim to stay with her sister that night. A more permanent living situation was arranged only after the victim reported the abuse and entered into the custody of the Department of Children and Families.

The defendant also claims that because the evidence of the stepfather's sexual assaults was contradicted by evidence that the victim lied about her accounts, the evidence was insufficient as it equally sustained two inconsistent propositions. See Commonwealth v. Smith, 342 Mass. 180, 183 (1961). We disagree. Putting aside that our appellate office does not permit us to reweigh the evidence ourselves to determine whether the jury made the correct guilt or innocence determination, see Jackson v. Virginia, supra at 326; Commonwealth v. Amazeen, 375 Mass. 73, 81 (1978), the "equal and inconsistent" concept does not apply to the circumstances of this case. The concept applies "to situations in which any view of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to essential elements of the crime charged in order to obtain a conviction." Commonwealth v. Latney, 44 Mass. App. Ct. 423, 426 (1998). Here, the jury's finding of guilt did not require a leap of conjecture with respect to the defendant's awareness of the substantial risk that sexual abuse was occurring, as the jury were entitled to credit the victim's account and infer the defendant's resulting knowledge. In other words, the Commonwealth's evidence was simply not in equipoise with the defendant's theory of innocence.

In fact, counsel twice indicated he was satisfied with the instruction.