## Commonwealth *vs.* Gary LeBlanc.

No. 07-P-1574.

Worcester. June 9, 2008. - February 3, 2009.

Present: Grasso, Smith, & Trainor, JJ.

Further appellate review granted, 453 Mass. 1109 (2009).

*Practice, Criminal,* Instructions to jury, Amendment of indictment or complaint. *Statute,* Construction. *Controlled Substances. Rape. Indecent Assault and Battery. Evidence,* Sexual conduct. *Consent. Words,* "Administer."

At the trial of an indictment charging drugging of a person for the purpose of sexual intercourse in violation of G. L. c. 272, § 3, the judge committed error in his instructions to the jury that in order to prove that the defendant "administered" drugs to the complainant, the Commonwealth merely had to establish that the defendant had provided drugs to the complainant, where the statutory language required forceful action, deceit, or trickery amounting to more than merely supplying alcohol or drugs to a willing individual [628-630]; as the instruction misinterpreted the key words forming the basis of criminal liability under the statute, the error was prejudicial and required that the conviction be vacated [630].

The evidence at the trial of indictments charging rape and indecent assault and battery were sufficient for a rational trier of fact to find beyond a reasonable doubt that the complainant was so incapacitated by drugs and alcohol that she was unable to consent to sexual activity and intercourse. [630-631]

A trial court judge properly amended a criminal indictment to change the date alleged for the offense charged, where the amendment was a matter of form that did not prejudice the defendant, and where the amendment did not materially change the work of the grand jury. [631-633]

INDICTMENTS found and returned in the Superior Court Department on July 22, 2004.

The cases were tried before *Peter W. Agnes, Jr.,* J.

*Debra S. Krupp,* Committee for Public Counsel Services, for the defendant.

*Patricia Flannery,* Assistant District Attorney, for the Commonwealth.

SMITH, J. In July of 2004, the defendant, Gary LeBlanc, was the subject of seven indictments charging him with rape (two

counts), indecent assault and battery on a person fourteen years old or over, drugging a person for the purpose of sexual intercourse, distribution of cocaine, procuring alcohol for a person under twenty-one years old, and a drug violation in a school zone. A Superior Court jury returned guilty verdicts on all counts.

On appeal, the defendant claims that the judge erroneously instructed the jury that to prove that the defendant "administered" drugs pursuant to G. L. c. 272, § 3, the Commonwealth only had to prove that the defendant "provided" drugs and alcohol which the complainant voluntarily consumed. He further claims that the evidence was insufficient to prove that the defendant drugged the complainant with the intent to have sexual intercourse with her. The defendant also argues that the rape and indecent assault and battery convictions must be reversed because there was insufficient evidence to prove that the complainant did not consent to sexual relations with the defendant. Finally, the defendant contends that the distribution of cocaine and school zone convictions must be reversed because the defendant may have been convicted of an offense for which he was not indicted.

*Background.* It was the Commonwealth's theory at trial that the complainant was so intoxicated and under the influence of cocaine, that she was incapable of consenting to sexual intercourse.[1]

The Commonwealth introduced the following evidence in support of that theory. On February 1, 2004, the complainant was eighteen years old and a senior at a local high school. The defendant, a lawyer, was approximately fifty years old and engaged in the practice of law out of his home in Gardner. The complainant and the defendant had been acquainted through friends and family for six years. The two saw each other approximately five times in late 2003, often at the complainant's aunt's house.

In the months prior to the assault in February of 2004, the complainant had been drinking alcohol frequently and had used cocaine five or six times. She obtained the cocaine from friends, her aunt, a cousin, and the defendant.

In December of 2003, the complainant attended the defendant's

---

[1]The complainant testified that there was no physical force or threat associated with any of the sexual activity.

Christmas party with her aunt. At the party, the complainant, the defendant, and several others went upstairs to the defendant's bedroom to use cocaine provided by the defendant. In the bedroom, the defendant tried to put his arm around the complainant, but she pulled away. The defendant had previously made the complainant aware that he was attracted to her and wanted to date her, but the complainant told him that she had a boyfriend. Shortly after the Christmas party, while at the complainant's aunt's house, the defendant joked to the complainant and her aunt that he should pull down his pants so the complainant could give him oral sex.

On Sunday, February 1, 2004, the complainant and her boyfriend attended a "Super Bowl" party at her father's house where she consumed two beers. Before the party ended, the complainant left and dropped her boyfriend off at their shared apartment. She then went to her aunt's house where there was a small gathering of people, including the defendant. At her aunt's house, the complainant consumed two "strong" alcoholic drinks. At some point, the defendant offered cocaine to the complainant, and the two used it together. The defendant again expressed his interest in going on a date with the complainant, but she again declined. Later that evening, the defendant, the complainant, and others ingested more of the defendant's cocaine. The defendant invited the complainant to his house for a party, but she declined.

After the aunt's party ended, the complainant drove herself home at approximately 11:30 P.M., but after finding her boyfriend asleep, she drove around for over one hour. At 1 A.M. on February 2, the complainant arrived at the defendant's home and went up to the defendant's bedroom, where she drank several more alcoholic drinks, ingested more cocaine, and smoked marijuana, all offered to the complainant by the defendant.

At 6 A.M. on February 2, the complainant left the defendant's home and returned to her apartment to get ready to go to school for an appointment with her guidance counselor. The complainant's boyfriend drove her to school, but because the complainant did not want her guidance counselor to know that she had been drinking, she broke the appointment and went back to the defendant's home. Once there, the complainant resumed drink-

ing and also ingested more cocaine. The complainant left the house to return to school for two periods in the early afternoon; the defendant picked her up later, and the two returned to his house. Once there, the defendant continued to make advances toward the complainant, which she rebuffed. Sometime later that day, the defendant left the house to buy wine and groceries, then returned to make dinner. Although the complainant did not eat much of her dinner, she consumed several glasses of wine. The two then returned to the bedroom.

At some point, the complainant realized that she was on the defendant's bed and that her clothes had "c[o]me off." The defendant kissed the complainant; when the complainant pulled away he told her, "No. Go do more coke." The complainant ingested another line of cocaine and returned to the bed where she put her clothes back on, but they kept "coming off." The defendant kissed her breasts and vagina and penetrated her vagina with his finger. The complainant kept telling him, "No. We're just friends."

At approximately 9 A.M. on February 3, three of the complainant's female friends knocked on the door to the defendant's bedroom. When the complainant did not answer, one of the friends pushed the door open, and the defendant told them to get out of the house because they were trespassing. He said that the complainant was an adult and could do as she pleased. The complainant's friends observed that the complainant was trying to put on her shirt and doing "weird things" with her mouth. The complainant appeared disheveled, and her pupils were enlarged. The women helped the complainant dress, walked her downstairs, and drove her to her father's house.

The complainant's father was not home when the girls arrived. However, when he returned he saw the complainant and testified that she appeared to be "zombie" like, "bobbing and weaving," and unable to speak. The complainant's father brought the complainant to the police station where she was interviewed by a police officer. The officer described the complainant as "intoxicated," "crying," "very upset," and "tired." The officer also testified that he asked the complainant "if [the defendant] forced her to do something that she didn't want to do." The complainant answered, "No."

*Discussion.* 1. *Drugging for sexual intercourse.* The defendant challenges the judge's charge to the jury on the drugging for sexual intercourse charge. The defendant contends that the judge erroneously instructed the jury that, to prove that the defendant "administered" drugs to the complainant, the Commonwealth only had to prove that the defendant "provided" drugs or alcohol which the complainant voluntarily consumed. The defendant objected to the jury instruction; therefore, we assess whether there was error in the charge, and if so, whether the error was prejudicial to the defendant. *Commonwealth* v. *Cruz*, 445 Mass. 589, 591 (2005).

"We view the charge to the jury in its entirety 'since the adequacy of instructions must be determined in light of their over-all impact on the jury.' " *Commonwealth* v. *Ferreira*, 417 Mass. 592, 595 (1994), quoting from *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). The judge began his instructions by reading in large part the statutory language:

> "Whoever applies, administers to or causes to be taken by a person any drug, matter or thing with the intent to stupefy or overpower such person so as to thereby enable — so as to thereby enable any person to have sexual intercourse or unnatural sexual intercourse with such person shall be punished."

See G. L. c. 272, § 3, as amended through St. 1998, c. 232, § 3.

The judge continued, stating the first element of the offense "administers or causes to be taken"

> "requires the Commonwealth to prove that the defendant gave or provided a drug or substance to [the complainant] either directly or by offering it to her and requesting her to take it. It is not necessary for the Commonwealth to prove that the defendant directly put the drug or substance into her by injection, nor into her food or drink. Also, it's not necessary for the Commonwealth to prove that the defendant forced her to consume it."

General Laws c. 272, § 3, does not define the word "administers" and it does not appear to have been defined in any Mas-

sachusetts appellate court decisions.[2] Where there is no definition in the statute, we interpret terms according to their "usual and accepted meanings . . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Robinson,* 444 Mass. 102, 105 (2005), quoting from *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977).

The relevant dictionary definition for "administer" is "to direct or superintend the execution, use or conduct of . . . to mete out . . . dispense . . . to give ritually . . . to give remedially." Webster's Third New Intl. Dictionary 27 (2002).[3]

The judge's instruction to the jury was erroneous because the dictionary definition of "administer" does not include the word "provide," and "provide" is not the usual or common meaning of the word "administer." In regard to the latter point, we agree with defense counsel's language that he used in arguing to the judge to adopt the dictionary language, i.e., "We don't administer iced tea to one another; we give it. We don't administer food; we give it."

Further, if the Legislature had intended for G. L. c. 272, § 3, to include the providing, or delivery, of a drug to another, then the Legislature would have used the words "provide," "give," "procure," "deliver," or "furnish," words that the legislature chose to use in G. L. c. 138, § 34, a statute that prohibits the sale or delivery of alcohol to minors.

Finally, the phrase "administered to" is inserted in G. L. c. 272, § 3, between the words "applies" and "causes to be taken." Read in context, the words of the statute require some forceful action or deceit or trickery on the part of the defendant

---

[2]In *Commonwealth* v. *Odell,* 34 Mass. App. Ct. 100, 104 (1993), and *Commonwealth* v. *Tatro,* 42 Mass. App. Ct. 918, 921 (1997), the defendants were convicted of violating G. L. c. 272, § 3, but in neither decision did the defendants argue that their actions did not constitute administering a drug. In *Commonwealth* v. *Helfant,* 398 Mass. 214, 218-220 (1985), there was no issue of administering a drug as the defendant admitted that he had injected Valium into the victim.

[3]The American Heritage Dictionary of the English Language 22 (Fourth Edition 2006) defines "administer" similarly: "To have charge of; manage. . . . To give or apply in a formal way . . . . To apply as a remedy . . . . To direct the taking of (an oath) . . . . To mete out; dispense . . . ."

that amount to more than merely supplying drugs or alcohol to a willing individual. Therefore, we hold that while the words of the statute encompass the conduct of a person who, for example, by trickery slips a "Mickey Finn" or "date rape pill" into a drink, the words "administer to" do not extend to a defendant who merely shares drugs or alcohol with a person who knowingly and voluntarily accepts the drugs or alcohol.

Here, the complainant testified that at no time did the defendant force her to take cocaine or force her to drink. In fact, she testified that she voluntarily shared the defendant's cocaine and alcohol.

Thus, the judge committed error in his instructions to the jury that in order to prove that the defendant administered cocaine and alcohol to the complainant the Commonwealth merely had to establish that the defendant provided cocaine and alcohol.

The error was prejudicial because the instruction was in regard to the central point of the drugging a person for sexual intercourse statute. It misinterpreted the key words "administered to" which are the basis of criminal liability under the statute. In these circumstances, we cannot say with confidence that the error was unlikely to have affected the jury's deliberations on whether the defendant violated G. L. c. 272, § 3.[4]

2. *Rape and indecent assault and battery.* The defendant also claims that his convictions for rape and indecent assault and battery must be reversed because the Commonwealth failed to prove beyond a reasonable doubt that, because of her consumption of drugs and alcohol, the complainant was incapable of consenting to sexual intercourse and sexual battery, a required element of both charges where there is no allegation of physical force. The burden of proof on lack of consent is the same for rape and indecent assault and battery. *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 188 (1991).

---

[4]In addition, the defendant filed a motion for a required finding of not guilty as to the drugging of a person for sexual intercourse indictment that was denied first at the close of the Commonwealth's case and also at the end of the evidence.

Because of our interpretation of G. L. c. 272, § 3, we hold that the Commonwealth presented insufficient evidence to prove that the defendant administered or caused the victim to take drugs, and therefore, judgment must be entered in favor of the defendant on that indictment.

"First, where drugs or alcohol are concerned, it is important to emphasize that . . . consumption or even intoxication by itself is not the issue. . . . The question instead is whether, as a result of the complainant's consumption of drugs, alcohol, or both, she was unable to give or refuse consent." *Commonwealth* v. *Blache*, 450 Mass. 583, 590 (2008). We summarize the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

Here, the Commonwealth presented evidence that earlier in the day the complainant consumed alcohol and ingested cocaine on numerous occasions. Hours before the incident, the complainant consumed three or four glasses of wine with little or no food. The complainant additionally ingested cocaine multiple times that evening, including immediately before the assault. She testified that while on the defendant's bed her clothes kept coming off, but she did not remember how they were removed. When her friends arrived in the defendant's bedroom that morning, they noticed that the complainant appeared disheveled and was "doing weird things with her mouth" even though she was not speaking. Later that morning, the complainant's father observed that she appeared "zombie" like, was unable to speak, and moved erratically. Based on the above evidence, a rational trier of fact could find beyond a reasonable doubt that the complainant was so incapacitated by drugs and alcohol that she was unable to consent to sexual activity and intercourse.[5]

3. *Amendment to the school zone indictment.* The defendant was indicted for distribution of cocaine on February 1, 2004, in Gardner. He also was indicted for a narcotic violation in a school zone on February 2, 2004, in Gardner. In a response to a question from the jury, and over the defendant's objections, the judge allowed the indictment charging distribution of cocaine to be changed from February 1, 2004, to February 2, 2004.

---

[5]The complainant admitted that she performed oral sex on the defendant at some time during the episode in the defendant's bedroom. The defendant argues, therefore, that the evidence was insufficient to warrant an instruction on incapacity to consent to sexual activity.

The fact that she performed oral sex on the defendant does not negate the other evidence introduced by the Commonwealth that demonstrates the complainant's incapacity to consent to the acts that are the subjects of the indictment.

The defendant argues that the judge improperly amended the indictment when he changed the date of the offense from February 1, 2004, to February 2, 2004, and claims that both the distribution and school zone convictions should be reversed.

The grand jury heard evidence regarding the defendant's alleged distribution of cocaine at the complainant's aunt's home in Westminster on February 1. The grand jury also heard evidence regarding the defendant's distribution of cocaine on February 2 in Gardner. The grand jury also heard evidence relating to the school zone violation on February 2 in connection with the distribution of drugs in Gardner.

Under Mass.R.Crim.P. 4(d), 378 Mass. 849-850 (1979), "a judge may allow amendment of the form of a[n] . . . indictment if such amendment would not prejudice the defendant or the Commonwealth." In order for an amendment to be proper, it must be a matter of form and not a matter of substance, and, if a matter of form, it must not result in prejudice. *Commonwealth* v. *Knight*, 437 Mass. 487, 491 (2002). Further, art. 12 of the Massachusetts Declaration of Rights requires that "no one may be convicted of a crime punishable by a term in the State prison without first being indicted for that crime by a grand jury." An amendment cannot change the work of the grand jury. *Id.* at 492, quoting from *Commonwealth* v. *Barbosa*, 421 Mass. 547, 549 (1995).

First, we address whether the amendment of the indictment was a matter of form or matter of substance. "The time alleged for an offense is ordinarily treated as a matter of detail rather than substance." *Commonwealth* v. *Campiti*, 41 Mass. App. Ct. 43, 50 (1996). In *Commonwealth* v. *Knight, supra* at 491-494, the court ruled that the judge did not commit error when he amended a murder indictment by changing the date of the death of the victim, where the change did not involve an essential element of the crime, did not result in prejudice to the defendant, and did not materially change the work of the grand jury.

Here, the change was a matter of form. The defendant was not prejudiced. The defense acknowledged that the complainant was in the defendant's home on February 2 but disputed the complainant's credibility. Therefore, the change in the date did not prejudice the defendant in any respect.

The amendment also did not materially change the work of the grand jury because that body heard sufficient evidence for a finding of probable cause that the defendant did distribute cocaine on February 2, in Gardner. Further, the grand jury heard evidence that only on February 2 in Gardner did the defendant distribute cocaine in a school zone, which indicates to us that the grand jury intended to indict the defendant for distribution of cocaine on February 2 in Gardner and not February 1. In sum, there was no error in the amendment of the distribution indictment.

*Conclusion.* We affirm the defendant's convictions of rape (two counts), indecent assault and battery, furnishing alcohol to a minor, distribution of cocaine, and distribution of cocaine in a school zone. We vacate the defendant's conviction of drugging a person for the purpose of sexual intercourse, and order judgment in favor of the defendant on that indictment.

Because the defendant's sentence for drugging a person for the purpose of sexual intercourse was the lead sentence, with other sentences concurrent with that sentence, we remand the matter to the Superior Court for resentencing on the rape (two counts), indecent assault and battery, and furnishing alcohol to a minor convictions.

*So ordered.*