## COMMONWEALTH *vs.* GARY LEBLANC.

Worcester. December 9, 2009. - February 18, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Rape. Indecent Assault and Battery. Administering Drug with Intent of Facilitating Unlawful Sexual Intercourse. Practice, Criminal,* Required finding, Instructions to jury. *Consent. Words,* "Administer."

At the trial of indictments charging, inter alia, rape and indecent assault and battery, evidence that the victim had not eaten, had consumed a dozen beers, as well as three to four glasses of wine, and ingested a quantity of cocaine, and faded in and out of consciousness such that she was aware that her clothes were off only when she was roused by the defendant performing sexual acts on her, was sufficient to permit the jury to conclude that the victim was so impaired as to be incapable of consenting. [138-140]

At the trial of indictments charging, inter alia, rape and indecent assault and battery, there was no error in the judge's jury instruction on incapacity, i.e., that the mere fact that the victim consumed alcohol and cocaine and exhibited symptoms of intoxication did not necessarily mean that she was incapable of consenting, where the instruction properly informed the jury that the victim's alcohol or drug consumption or symptoms of intoxication did not inevitably mean that she was incapable of consenting. [140-141]

At the trial of indictments charging, inter alia, drugging a person for unlawful sexual intercourse, in violation of G. L. c. 272, § 3, the judge erred in instructing the jury that Commonwealth was required to prove only that the defendant "gave or provided" a drug to the victim, where a conviction of violating the statute requires that the defendant do something more than what occurred here, i.e., simply making alcohol and drugs available to the victim; further, reversal of the defendant's conviction and entry of judgment for the defendant was required where the instruction misinterpreted key words that are the basis of criminal liability under the statute, and this court could not, therefore, say with confidence that the error was unlikely to have affected the jury's deliberations. [141-145]

INDICTMENTS found and returned in the Superior Court Department on July 22, 2004.

The cases were tried before *Peter W. Agnes, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Debra S. Krupp,* Committee for Public Counsel Services, for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was convicted of rape (two indictments), indecent assault and battery, drugging a person for unlawful sexual intercourse, distribution of cocaine, procuring liquor for a person under twenty-one years of age, and a drug violation in or near a school or park. He appealed, and the Appeals Court affirmed all but his conviction of drugging a person for unlawful sexual intercourse, which was vacated on the ground that an error in the jury instruction was prejudicial to the defendant. *Commonwealth* v. *LeBlanc*, 73 Mass. App. Ct. 624, 630, 633 (2009). We granted both the Commonwealth's and the defendant's applications for further appellate review, limited to the convictions of drugging a person for unlawful sexual intercourse, rape, and indecent assault and battery. We affirm the defendant's convictions of rape and indecent assault and battery. Because, as we interpret the statute on drugging a person for unlawful sexual intercourse, there was insufficient evidence to support the defendant's conviction, we reverse his conviction, set aside the verdict, and enter judgment for the defendant on that indictment.

*Facts and background.* We present the essential facts the jury could have found, the details of which are set forth in *Commonwealth* v. *LeBlanc*, *supra*.

In 2004, the victim was an eighteen year old woman and a senior in high school. Through friends and family, she had known the defendant, an approximately fifty year old attorney, since she was twelve years old. In the months before the incident, the victim, who weighed approximately 119 pounds, was drinking frequently and had used cocaine five or six times, including an incident in December, 2003, where the defendant provided the cocaine. Beginning in December, 2003, the defendant also had made sexual overtures to the victim, which she rebuffed, sometimes laughingly. Several times she explained to the defendant that she had a boy friend.

The events at the center of this case took place on February 1 and 2, 2004. The victim attended two "Super Bowl" parties on February 1, and consumed alcoholic drinks at both. The defendant was present at the second party. There, he and the victim ingested cocaine twice. The defendant expressed interest in dating the victim, but she declined. He invited the victim to his house for a party that same evening. Although the victim declined the invitation, she could not sleep because of her ingestion of

cocaine, and at approximately 1 A.M. on February 2, she went to the defendant's house.

When she arrived, only the defendant was there. She consumed more alcohol, cocaine, and marijuana, all provided by the defendant. The victim testified that the pair stayed up all night talking. In the morning, the victim went to school, but she left twice, each time returning to the defendant's house. During the first time she returned, she drank a beer and used cocaine. The second time she returned, she was "still . . . drunk and high."

During this second visit, she drank more beer and ingested more cocaine. The defendant again made advances toward the victim that she rebuffed. The defendant served her wine, and the victim had three to four glasses. Because of the cocaine, the victim was not hungry and had almost nothing to eat that day; the last food she had eaten was when she was at the first "Super Bowl" party the night before. Moreover, she consumed approximately twelve beers at the defendant's house on February 2.

After the victim consumed the wine, the pair retreated to the defendant's bedroom, where the defendant kept cocaine. The victim testified that while in the bedroom she did not remember what happened, but she realized her "clothes came off" because the defendant was kissing her vagina. When she tried to move away, he told her to "do another line" of cocaine, which she did. She stated that she sat back down on the bed and "remember[ed] being in [the defendant's] bed [and] putting my clothes back on a few times, and then them coming off again." She did not recall how they came off, but remembered putting them back on. The defendant also sucked on her breasts, and licked and touched her vagina and penetrated it with his finger. She testified that she told him, "No. We're just friends."

At approximately 9 P.M., three of the victim's friends arrived at the defendant's house, went up to the bedroom, knocked on the door, and told the victim she had to leave with them. Although the victim answered that she was coming, when she did not, one friend opened the door. The friends testified that the victim was dirty and her hair was in "knots" and messier than if she had just been sleeping. She smelled of alcohol, seemed to be under the influence of drugs or alcohol, was slurring her words, and "seemed like she didn't know what was going on or why

they were there." The friends had to help her put her shirt on. They saw her jaw moving in a peculiar manner, although there were no words coming out. The victim was wobbly and unsteady on her feet, and her friends helped her get down the stairs from the defendant's bedroom and had to help her into their vehicle. Her friends drove her to her father's house.

The victim's father testified that, when she arrived, she looked like a "zombie"; she was screaming and crying and unable to focus. He also noticed her "involuntary jaw movement" and that she could not speak. Indeed, the victim testified that for a day or so after she left the defendant's house she could not eat because her mouth was sore from her chewing on her mouth and lips, something she did when she ingested cocaine. Her father brought her to a police station. The officer who interviewed her the evening of February 2 testified that she was intoxicated, crying, and upset. The victim had no clear memory of what she told this officer.[1]

*Rape and indecent assault and battery.* The defendant acknowledged that he and the victim engaged in sexual activity, and there was no allegation that the defendant used force. At trial on the rape and indecent assault and battery charges, the Commonwealth bore the burden of proving, beyond a reasonable doubt, that the victim's consumption of drugs and alcohol rendered her incapable of consenting to sexual contact with the defendant.[2] See *Commonwealth* v. *Moran*, 439 Mass. 482, 490 (2003), citing *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 188 (1991) (Commonwealth's proof of lack of consent same in both rape and indecent assault and battery cases). "[A]n instruction concerning the capacity to consent should be given in any case where the evidence would support a finding that because of the consumption of drugs or alcohol or for some other reason . . . [a person is] so impaired as to be incapable of consenting to sexual intercourse." *Commonwealth* v. *Blache*, 450 Mass. 583, 591-592 (2008).

---

[1]One police officer testified that he tried to interview the victim on the afternoon of February 3, but had to stop because the victim was tired, had a very hard time understanding what he was saying, and had difficulty speaking.

[2]The two indictments charging rape were based on the defendant's inserting his finger in the victim's vagina and kissing and licking her vaginal area. The indictment charging indecent assault and battery was based on the defendant's placing his mouth on her breasts.

At the close of the Commonwealth's case, the defendant filed a motion for required findings of not guilty, which he renewed at the close of all the evidence, arguing that there was no evidence that the complainant could not consent to the sexual contact. The defendant argues on appeal that because of a lack of evidence, the trial judge erred in instructing the jury on incapacity to consent. We disagree.

Viewing the evidence in the light most favorable to the Commonwealth, there was ample evidence for the jury to conclude, beyond a reasonable doubt, that the victim was so impaired as to be incapable of consenting. See *Commonwealth* v. *Ellis*, 432 Mass. 746, 762 (2000); *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On February 2 alone, the victim, who had not eaten, consumed a dozen beers, three to four glasses of wine, and ingested a quantity of cocaine, some of it at the defendant's urging during the assaults. The jury were warranted in believing the victim's testimony that she did not know how her clothes came off, and that she put them back on several times. They reasonably could have inferred that the victim faded in and out of consciousness and achieved some level of awareness that her clothes were off only when she was roused by the defendant's performing sexual acts on her. Her testimony of her general state was corroborated by the testimony of the friends who found her, her father, and the first police officer who interviewed her. These facts are consistent with facts in other cases where the court has held that the instruction was warranted. See, e.g., *Commonwealth* v. *Moran*, 439 Mass. 482, 490-491 (2003) (instruction on capacity to consent warranted where complainant had been drinking, had glassy and bloodshot eyes, and was swaying; ingested Percocet; and testified that she felt drugged and that she was sleeping but awoke each time the defendant committed sexual acts on her); *Commonwealth* v. *Helfant*, 398 Mass. 214, 221-222 (1986) (victim injected with Valium and awoke from her unconscious stupor only when jarred by telephone ringing or motion of defendant's body on top of hers).

On cross-examination, the victim agreed that in the "early evening" she performed "some degree of oral sex" on the defendant and that he did not "force" her. The defendant interprets her statement that there was no force to mean that she voluntarily performed oral sex and argues that it shows that she was capable

of consenting to all the sexual acts that occurred. We disagree. The jury reasonably could have inferred from this testimony that the incident occurred earlier in the evening than the incidents for which the defendant was charged, and that the victim became incapable of consenting as the evening progressed. The jury also reasonably could have concluded that, despite her testimony, the victim was already incapable of consenting to the oral sex. In any event, the specific incidents for which the defendant was charged did not include this incident of oral sex. See note 2, *supra.*

In *Commonwealth* v. *Blache, supra* at 597, this court held that "in order to sustain a conviction on a theory of incapacity to consent, the Commonwealth must prove that the defendant knew or reasonably should have known that the complainant's condition rendered her incapable of consenting." Although the defendant acknowledges that our decision in *Blache* in 2008 explicitly stated that the new rule was not given retroactive effect, *id.,* and thus does not apply to him, he nevertheless argues that it would be unjust to hold the defendant accountable without such proof. We do not accept the defendant's invitation to revisit our decision to apply the rule prospectively only.[3]

The defendant next argues that the judge erred when he instructed the jury on incapacity to consent:

> "[I]f by reason of sleep or intoxication due to alcohol, cocaine, or a combination of these factors, a person is unconscious, helpless, or so minimally conscious that she is incapable of consenting, an act of sexual intercourse occurring with that person while she is in that state is without her valid consent and rape. . . .

> "However, the mere fact that someone consumes some alcohol and/or cocaine or exhibited some of the symptoms commonly associated with intoxication *does not necessarily*

---

[3]There was sufficient evidence that the defendant knew or should have known that the victim was not capable of consenting. He provided a dozen beers, wine, and cocaine that the victim consumed. The testimony of the victim's friends, father, and the first police officer who interviewed her was evidence of her impaired condition. Moreover, the fact that each time the victim rebuffed the defendant's sexual advances he told her to ingest more cocaine, after which she could not recall how her clothes "came off," allows an inference that the defendant was aware of the effect of the drugs and alcohol on the victim.

*mean* [she is] incapable of giving consent" (emphasis added).

The defendant takes issue only with the phrase "does not necessarily mean," arguing that the adverb "necessarily" should have been omitted. He argues that there is a substantial risk that the jury understood the instruction to mean that the "mere consumption of alcohol and/or cocaine or her exhibition of some symptoms of intoxication *might* mean that she is incapable of giving consent." This argument is unavailing.

In his instruction, the judge added an appropriate adverb, "necessarily," which means "inevitably" or "unavoidably," to modify "does not . . . mean." Webster's Third New Int'l Dictionary 1510 (1993). The defendant's construction, on the other hand, removes the auxiliary verb "does not" altogether, and substitutes the auxiliary verb "might," which, as the past tense of the verb "may," expresses possibility. *Id.* at 1396, 1432. We are not persuaded that the jury would have disregarded the phrase "does not" in the judge's instruction and engaged in the strained interpretation the defendant proposes, which makes superfluous the critical words "does not." See generally *Commonwealth* v. *Auclair*, 444 Mass. 348, 360 (2005) (jury presumed to follow judge's instruction).

Furthermore, the judge's instruction conforms to the requirements set forth in *Commonwealth* v. *Urban*, 450 Mass. 608 (2008), that to prove incapacity to consent, "the Commonwealth must establish beyond a reasonable doubt that 'because of the consumption of drugs or alcohol or for some other reason (for example, sleep, unconsciousness, mental retardation, or helplessness), the complainant was so impaired as to be incapable of consenting to intercourse.' " *Id.* at 613, quoting *Commonwealth* v. *Blache*, *supra* at 591-592. Here, the judge properly informed the jury that the fact that the victim consumed alcohol or drugs or exhibited symptoms of intoxication did not inevitably mean that she was incapable of consenting.

*Drugging for unlawful sexual intercourse.* The defendant was convicted of drugging a person for the purpose of unlawful sexual intercourse, G. L. c. 272, § 3, which states, in relevant part:

"Whoever applies, administers to or causes to be taken

by a person any drug, matter or thing with intent to stupefy or overpower such person so as to thereby enable any person to have sexual intercourse or unnatural sexual intercourse shall be punished . . . ."

The word "administer" is not defined in the statute, nor does there appear to be any appellate decision addressing the issue.[4] The judge recited the language of the statute to the jury, but concerning the Commonwealth's burden to prove that the defendant "administer[ed] to or cause[d] to be taken," he instructed:

> "[The Commonwealth has] to prove that the defendant *gave or provided* a drug or substance to [the victim] *either directly or by offering it to her and requesting her to take it.* It's not necessary for the Commonwealth to prove that the defendant directly put the drug or substance into her by injection, nor into her food or drink. Also, it is not necessary for the Commonwealth to prove that the defendant forced her to consume it." (Emphasis added.)

The defendant argues that the judge's instruction, over his objection, that the Commonwealth had to prove only that the defendant "gave or provided" drugs to the victim was erroneous. Where a defendant objects to an instruction, the court must determine whether the instruction was error and review the instruction as a whole to determine whether it prejudiced the defendant. See *Commonwealth* v. *Cruz*, 445 Mass. 589, 591, 597 (2005); *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980).

In its analysis whether the instruction was erroneous, the Appeals Court first noted the familiar rule that where a word is undefined in the statute, we use its "usual and accepted meanings." *Commonwealth* v. *LeBlanc, supra* at 629, quoting *Commonwealth* v. *Robinson*, 444 Mass. 102, 105 (2005). The court stated that two dictionaries did not define "administer" as "[to] provide" but rather as "to direct or superintend the execution,

---

[4]In *Commonwealth* v. *LeBlanc*, 73 Mass. App. Ct. 624, 628-629 & n.2 (2009), the Appeals Court pointed out that in *Commonwealth* v. *Helfant*, 398 Mass. 214, 218-220 (1986), the defendant doctor admitted injecting the victim with Valium. In *Commonwealth* v. *Tatro*, 42 Mass. App. Ct. 918, 921 (1997), and *Commonwealth* v. *Odell*, 34 Mass. App. Ct. 100, 104 (1993), the defendants were convicted of violating G. L. c. 272, § 3, but neither argued that his actions did not constitute "administer[ing]" under the statute.

use or conduct of . . . to mete out . . . dispense . . . to give ritually [or] remedially" and "[t]o have charge of; manage." *Id.* at 629 & n.3, quoting Webster's Third New Int'l Dictionary 27 (2002), and the American Heritage Dictionary of the English Language 22 (4th ed. 2006).

The court also concluded that, had the Legislature intended for the word "administer" to mean "provide," it could have used those words, as it did in G. L. c. 138, § 34, which prohibits the sale or delivery of alcohol to a minor.[5] *Id.* at 629. Finally, the court concluded that, reading the word "administer" in context, i.e., placed between the words "applies" and "causes to be taken," the statute requires "some forceful action, deceit or trickery on the part of the defendant." *Id.*

The Commonwealth sets forth several arguments that there was no error in the instruction, including that the gravamen of the statute is not the method by which the victim is drugged but rather the use of such drugs by the defendant to facilitate unlawful intercourse; that the word "administer" can mean "provide" where, in common usage, the words "give" and "provide" are synonymous, and the word "give" is defined as "to administer"; that other jurisdictions have defined "administer" as to "give"; and that the statutory words "cause to be taken" are the equivalent of "give or provide."

We are not persuaded and instead, for the reasons set forth by the Appeals Court, conclude that to violate the statute, a defendant must do something more than what occurred here, i.e., simply making alcohol and drugs available to the eighteen year old victim, who testified that she returned to the defendant's house to consume more drugs and alcohol. The Commonwealth, in support of its argument that the gravamen of the statute is the defendant's intent, points to the fact that the crime of drugging for unlawful sexual intercourse carries a (potentially) harsher sentence than does the crime of forcible rape.[6] We conclude, however, that the disparate sentences support our conclusion that merely

[5]General Laws c. 138, § 34, uses the words "delivers," "procures," and "furnish," and defines "furnish" as "to knowingly or intentionally supply, give or provide to or allow."

[6]Under G. L. c. 272, § 3, drugging for unlawful sexual intercourse imposes a punishment of from ten years to life, whereas forcible rape, G. L. c. 265, § 22 (*b*), imposes a punishment of up to twenty years.

making alcohol or drugs available is not enough to convict under G. L. c. 272, § 3.[7] Moreover, even assuming that the Commonwealth's arguments regarding other jurisdictions and the possibility that "administer" or "cause to be taken" could mean "provide" or "give" are valid, its interpretation demonstrates that the language of the statute is ambiguous. "[C]riminal statutes are strictly construed against the Commonwealth, and . . . any plausible ambiguity must be resolved in favor of the defendant." *Youngworth* v. *Commonwealth*, 436 Mass. 608, 611 (2002), citing *Commonwealth* v. *Wotan*, 422 Mass. 740, 742 (1996). See *Commonwealth* v. *Rahim*, 441 Mass. 273, 284 n.19 (2004), quoting *Commonwealth* v. *Carrion*, 431 Mass. 44, 45-46 (2000) (rule of lenity requires that defendant receive benefit of ambiguous statutory language). We conclude that the judge erred in his instruction to the jury.

We agree with the Appeals Court that the error was prejudicial because the instruction misinterpreted key words that "are the basis of criminal liability under the statute. In these circumstances, we cannot say with confidence that the error was unlikely to have affected the jury's deliberations" on whether the defendant was guilty of drugging a person for unlawful sexual intercourse. *Commonwealth* v. *LeBlanc*, *supra* at 630. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994) (error prejudicial if court cannot fairly say that judgment not substantially swayed by error).

The defendant also argues that evidence was insufficient to prove he was guilty of drugging the victim for unlawful sexual intercourse. Given our interpretation of the statute, we agree that evidence that the defendant simply made alcohol and cocaine available for use by a willing eighteen year old is not sufficient to prove that the defendant drugged her for unlawful sexual

[7]The predecessor statute to G. L. c. 272, § 3, was enacted in 1886. St. 1886, c. 329, § 2. In 1998, the Legislature struck the 1978 version, St. 1978, c. 379, § 4, and increased the sentence to State prison from a maximum of three years to a minimum of ten years and eliminated alternative sentences of a maximum of two and one-half years in a house of correction, a fine of $1,000, or both. St. 1998, c. 232, § 3. The parties have not supplied any informative legislative history or suggested that any exists. At oral argument the Commonwealth represented that there was none, but pointed to the emergency preamble to the 1998 amendment, which states that the purpose of the statute is to "prevent forthwith drug induced rape and kidnapping." St. 1998, c. 232.

intercourse. The defendant's conviction of violating G. L. c. 272, § 3, must be reversed and judgment entered for the defendant on that indictment.

*Conclusion.* Concerning the limited portion of the appeal on which we granted further appellate review, the judgments of conviction on the indictments charging rape and the indictment charging indecent assault and battery are affirmed. The judgment of conviction on the indictment charging drugging a person for unlawful sexual intercourse is reversed, the verdict set aside, and judgment entered for the defendant. Because the sentences on the defendant's other convictions were to run concurrently with his sentence for drugging a person for unlawful sexual intercourse, the case is remanded for resentencing. See *Commonwealth* v. *Talbot,* 444 Mass. 586, 597-598 (2005) (remanding for resentencing where erroneously applied sentence of lifetime community parole "may have played a part in the judge's over-all concept in sentencing the defendant").

*So ordered.*