COMMONWEALTH vs. WASHINGTON PEARSON.

No. 08-P-1976.

Essex. November 10, 2009. - June 24, 2010.

Present: McHugh, Trainor, & Hanlon, JJ.

*Practice, Criminal,* Indictment, Bill of particulars, Duplicative convictions,
Instructions to jury, Conduct of judge. *Grand Jury. Constitutional Law,*
Grand jury, Indictment. *Larceny. Fraudulent Use of Credit Card. Evidence,*
Prior misconduct, Relevancy and materiality, Identification. *Identification.*
*Judge.*

A Superior Court judge properly denied a criminal defendant's motion to
dismiss indictments charging the defendant with, inter alia, fraudulent use
of a credit card, in violation of G. L. c. 266, § 37C, where the language of
the indictments was clear and unambiguous, such that a fair reading of the
language clearly imported an allegation that the defendant had an intent to
defraud when he knowingly received a stolen credit card intending to use
it, and where, in addition, the defendant was provided with a bill of
particulars that, when read with the indictment, gave him specific notice of
the dates, places, times, and transactions underlying the charges. [98-99]
In the circumstances of a criminal case in which the defendant was indicted
for a particular transaction, involving fraudulent use of a stolen credit card
and larceny, that the Commonwealth's evidence at trial convincingly
demonstrated was committed by his codefendant, it was prejudicial to
permit the Commonwealth to amend its bill of particulars during the trial
and, over the defendant's objection, to allege that the defendant committed
a different crime at a different time at a different part of the same store us-
ing a different person's stolen credit card; therefore, this court reversed the
defendant's convictions of larceny and fraudulent use of a credit card
related to the transaction at issue. [99-102]
This court vacated as duplicative one of a criminal defendant's two convic-
tions of fraudulent use of a credit card, in violation of G. L. c. 266, § 37C(*b*),
where each indictment alleged receipt by the defendant of the same stolen
credit card. [102-103]
At the trial of indictments charging, inter alia, fraudulent use of a credit card,
no prejudice to the defendant arose from an erroneous jury instruction that
set forth additional elements of the crime not found in the subsection of
the statute alleged to be violated. [103-104]
At the trial of indictments charging, inter alia, fraudulent use of a credit card,
the judge did not abuse his discretion in permitting the Commonwealth to
introduce evidence linking the defendant, circumstantially, to the theft of
the credit cards and other items a few hours before the alleged transactions

involving the cards [104]; further, error, if any, in the judge's admission of certain testimony comparing surveillance photographs alleged to depict the defendant was not prejudicial and was cumulative of other evidence [104-106]; finally, the judge's allegedly biased comments to a Commonwealth witness, even if better left unsaid, at least in front of the jury, did not create a risk of a miscarriage of justice [106].

INDICTMENTS found and returned in the Superior Court Department on September 29, 2004.

A motion to dismiss was heard by *Mary-Lou Rup*, J., and the cases were tried before *Richard E. Welch, III*, J.

*Kathleen M. McCarthy* for the defendant.

*Kenneth E. Steinfield*, Assistant District Attorney, for the Commonwealth.

HANLON, J. The defendant appeals from his conviction after a jury trial of three charges of fraudulent use of a credit card, G. L. c. 266, § 37C, and three charges of larceny of property having a value of less than $250, G. L. c. 266, § 30.[1] He argues, as to the fraudulent use of a credit card charges, that the indictments were defective; that there was insufficient evidence to sustain his conviction for those offenses; and that the jury were not properly instructed on them. He also argues that certain bad act evidence was wrongly admitted; that he was prejudiced when the judge showed bias in his treatment of a Commonwealth witness; and that, as to one of the transactions using a stolen credit card, he was indicted for offenses different from those proved at trial. We agree with the last argument and reverse the convictions for the two indictments related to that transaction. In addition, the two remaining convictions of fraudulent use of a credit card are duplicative; each of the indictments charged the defendant as *receiving* the same stolen credit card. Therefore, one must be vacated.

*Background.* The evidence would have warranted the jury in finding that the defendant and another man used credit cards stolen earlier in the evening from apartments in Boston to make

---

[1]Three charges of forgery, G. L. c. 267, § 1, were dismissed on the defendant's motion before trial. Also, as discussed *infra*, during the trial, the Commonwealth filed a nolle prosequi on three charges of misdemeanor misuse of a credit card, G. L. c. 266, § 37B.

purchases at a Target store and a Stop & Shop supermarket in Danvers.[2] The men were later identified on security tapes from those stores.[3]

The procedural history is complicated. General Laws c. 266, § 37C, felony fraudulent use of a credit card, has ten subsections and the indictments did not specify which subsection was charged.[4] The bill of particulars filed by the Commonwealth fairly informed the defendant of the conduct that was the basis for each of his charges, but still did not specify under which subsection of § 37C he was charged. Only in the Commonwealth's opposition to the defendant's motion to dismiss did it clarify its allegation that the defendant violated G. L. c. 266, § 37C(b).[5] The motion judge denied the motion to dismiss the indictments for failure to state a crime.

As the Commonwealth acknowledges, by the close of the Commonwealth's case at trial, both the Commonwealth and the judge were proceeding as if the defendant had been indicted on the felony charges for a violation of G. L. c. 266, § 37C(d),[6]

---

[2]For each transaction, the defendant was charged with receiving the stolen credit card, G. L. c. 266 § 37C(b), and with larceny of the property of the store, G. L. c. 266, § 30. He was not charged with stealing the credit cards.

[3]Individuals identified as the defendant and his codefendant were observed, after the fact, on security tapes walking through the common areas of the Harbor Towers apartment building. In the following days, three residents discovered items, including the credit cards at issue, missing from their apartments.

[4]The three fraudulent use of a credit card indictments read, "Washington Pearson . . . did receive a credit card with the intent to use it, knowing said credit card had been taken by any act that would constitute larceny from the person, possession, custody or control of another without the cardholder's consent, in violation of G. L. c. 266, § 37C."

[5]G. L. c. 266, § 37C(b), provides, "Whoever, with intent to defraud, . . . (b) receives a credit card which he knows was taken or retained under circumstances which constitute credit card theft . . . shall be punished."

[6]G. L. c. 266, § 37C(d), provides:

> "Whoever, with intent to defraud, . . . (d) obtains money, goods, services or anything else of value by use of a credit card obtained or retained in violation of clauses (b) to (e), inclusive, of section thirty-seven B, or by use of a credit card which he knows is forged, . . . where the value of the money, goods or services obtained in violation of this section is in excess of two hundred and fifty dollars, . . . shall be punished." The parties dispute whether the phrase, requiring the money or goods obtained to be in excess of $250, applies to the first

rather than § 37C(*b*).[7] At that point, after the judge announced that he believed that the misdemeanor and felony offenses would merge for sentencing purposes, the Commonwealth filed a nolle prosequi on the three misdemeanor charges for misuse of a credit card.[8] The judge then instructed the jury in language that did not track either statute precisely, although it incorporated all of the elements from § 37C(*b*), as well as several additional elements.[9]

*Indictments for felony fraudulent use of a credit card.* The defendant argues that the indictment language for the fraudulent use charge did not follow the statute in that the statutory language, "[w]ith intent to defraud," is missing from the indictment, and the indictment language, "with the intent to use it," is not contained in the felony statute charged, but, rather, in the misdemeanor statute. G. L. c. 266, § 37B(*b*).

"[A]n indictment must contain a 'plain, concise description of the act which constitutes the crime or an appropriate legal term descriptive thereof.' Mass.R.Crim.P. 4(a), 378 Mass. 849 (1979). A complaint or indictment will not be dismissed . . . 'if the offense is charged with sufficient clarity to show a violation of law and to permit the defendant to know the nature of the accusation against him.' " *Commonwealth* v. *Fernandes*, 430 Mass. 517, 519-520 (1999), cert. denied sub nom. *Martinez* v.

part of the subsection, the language discussed at trial, or only the last part, which is not relevant to this case. We do not reach that issue as the defendant was charged only with violating subsection (*b*), which contains no reference to required dollar amounts of "money, goods or services."

[7]The judge assumed that § 37C(*d*) was the relevant subsection and the prosecutor did not correct him.

[8]The three misdemeanor indictments essentially tracked the language of G. L. c. 266, § 37B(*f*), which provides:

"Whoever, with intent to defraud, . . . (*f*) uses, for the purpose of obtaining money, goods, services or anything else of value, a credit card obtained or retained in violation of clauses (*b*) to (*e*), inclusive, or a credit card which he knows is forged . . . , where the value of money, goods or services obtained in violation of this section is not in excess of two hundred and fifty dollars, . . . shall be punished."

[9]We note that neither the Superior Court nor the District Court has a model instruction for violations of § 37B or § 37C.

*Massachusetts,* 530 U.S. 1281 (2000), quoting from *Commonwealth* v. *Green,* 399 Mass. 565, 566 (1987). See *Commonwealth* v. *Williams,* 73 Mass. App. Ct. 833, 837 (2009) ("A charge must appear with 'sufficient clarity . . . to enable the accused to know the nature and cause of the accusation against him, to prepare an adequate defense, and to plead an acquittal or conviction in bar of future prosecution for the same offense.' *Commonwealth* v. *Donoghue,* 23 Mass. App. Ct. 103, 110 (1986), cert. denied, 481 U.S. 1022 [1987]"). Moreover, the law is clear that "[i]t is not necessary for the Commonwealth to set forth in the complaint or indictment every element of the crime to withstand a motion to dismiss." *Commonwealth* v. *Green, supra* at 566.

Here, the language of the indictment was clear and unambiguous: "Washington Pearson . . . did receive a credit card with the intent to use it, knowing said credit card had been taken by any act that would constitute larceny from the person, possession, custody or control of another without the cardholder's consent, in violation of G. L. c. 266, § 37C." A fair reading of that language clearly imports an allegation that the defendant had an intent to defraud when he knowingly received a stolen credit card intending to use it. See *id.* at 567. In addition, the defendant was provided with a bill of particulars that, when read with the indictment, gave him specific notice of the dates, places, times, and transactions underlying the charges. See *Commonwealth* v. *Pillai,* 445 Mass. 175, 188 (2005); *Commonwealth* v. *Leavitt,* 17 Mass. App. Ct. 585, 588, cert. denied, 469 U.S. 835 (1984). We see no defect in the indictments.

*Variance between indictment and proof at trial.* In grand jury testimony, the defendant, Washington Pearson, was identified, from security photographs, as the person who conducted three specific transactions on April 27, 2004. His codefendant, Jose Colon, was accused in the same grand jury testimony as the person who conducted two additional and different transactions, including the use of Doris Gordon's American Express credit card to make a $227.75 purchase at Target at 9:58 P.M.[10] The Commonwealth's bill of particulars provided the same information, including specifically that, in one of the transactions,

[10]Colon pleaded guilty to his offenses before Pearson's trial began.

Washington Pearson used the Bank One Visa card of Elizabeth Spahn to make a $120.99 purchase at Target at 10:00 P.M.[11]

At trial, immediately after the jury was empanelled and the judge described the charges to the jury, the prosecutor announced that the transactions had been "confused" and that, in fact, the photographs showed that Colon made the Visa purchase at 10:00 P.M. and the defendant made the American Express purchase at 9:58 P.M. Initially, the prosecutor thought the mistake was only in the bill of particulars but, by the end of trial, she acknowledged that the error was made in the testimony of both of the Commonwealth's grand jury witnesses.

The judge denied the defendant's motion for a required finding of not guilty and his motion to dismiss the charges relating to the Target purchases, saying that it was permissible for the Commonwealth to amend its bill of particulars to conform to the trial evidence. He agreed with the Commonwealth that, because the defendant had been provided with discovery containing the photographs of the men who made the purchases, he had notice of which transaction he actually had made, and, apparently, which one the Commonwealth intended to charge him with.[12] The defendant, he ruled, was not prejudiced because his defense was mistaken identification.

"Article 12 [of the Declaration of Rights of the Massachusetts Constitution] requires that no one may be convicted of a crime punishable by a term in the State prison without first being

[11]The bill of particulars related this transaction to indictment "ESCR2004-1309-007: FRAUDULENT USE OF A CREDIT CARD" read as follows: "At approximately 10:00 p.m. on April 27th, 2004, the defendant possessed Elizabeth Spahn's Bank One Visa credit card, knowing that the credit card had been stolen earlier that night from Ms. Spahn's home, intending to use the credit card to fraudulently obtain goods and did fraudulently obtain $120.99 worth of goods at the Target Store located in the Liberty Tree Mall in Danvers, MA." The corresponding larceny indictment was "ESCR2004-1309-012" which read, in part, "Washington Pearson . . . did steal goods, the property of Target, said property having a value that does not exceed two hundred [and] fifty dollars."

[12]The prosecutor acknowledged that an error had been made and continued, "[b]ut the discovery that was provided is correct . . . . It listed the videotapes. It specifically stated that the videotapes corresponded to the transaction. And it's clear which person is Mr. Pearson and which person is Mr. Colon. One is [b]lack and one appeared [white]. I mean it's so obvious from the discovery, that again, the prejudice to the defendant is more technical than real."

indicted for that crime by a grand jury." *Commonwealth* v. *Barbosa*, 421 Mass. 547, 549 (1995). In *Barbosa*, the grand jury heard evidence that the defendant had twice distributed cocaine, but they returned only one count charging the defendant with distribution of cocaine. *Id.* at 548. "There was no indication that count one of the indictment was intended to include more than one act of distribution." *Ibid.* The court reversed the subsequent conviction, based upon "the very real possibility that the defendant was convicted of a crime for which he was not indicted by a grand jury." *Id.* at 551.

> "It is a rule of the common law, as well as a provision of the Constitution of this Commonwealth, that no one shall be held to answer, unless the crime with which it is intended to charge him is set forth in the indictment with precision and fulness; and this rule is not to be defeated by allowing the defendant to be convicted upon evidence of another offence of the same kind, committed on the same day, but not identical with it."

*Ibid.*, quoting *Commonwealth* v. *Dean*, 109 Mass. 349, 352 (1872). See *Commonwealth* v. *Muniz*, 456 Mass. 166, 174 (2010); *Commonwealth* v. *Porro*, 74 Mass. App. Ct. 676, 682, further appellate review granted, 455 Mass. 1106 (2009).

The defendant argues that, as in *Barbosa*, there is a real possibility that he was convicted of a crime for which he was not indicted. On the contrary, there is more than a possibility; it is quite clear that he was *in fact* convicted of a crime for which he was not indicted. This is not a situation where the Commonwealth made a mistake about a detail such as the date. See *Commonwealth* v. *Knight*, 437 Mass. 487, 492-494 (2002); *Commonwealth* v. *Pillai*, 445 Mass. at 188-189; *Commonwealth* v. *LeBlanc*, 73 Mass. App. Ct. 624, 632 (2009), *S.C.*, 456 Mass. 135 (2010). Nor did it mistake the place of the crime. See *Commonwealth* v. *Parrotta*, 316 Mass. 307, 309-310 (1944). Nor is this a mistake or lack of clarity about the name of the victim whose credit card was used in the transaction. See *Commonwealth* v. *Wilson*, 72 Mass. App. Ct. 416, 418 n.6. (2008).

This defendant was indicted for a particular transaction, involving fraudulent use of a stolen credit card, that the Com-

monwealth's trial evidence convincingly demonstrated was committed by someone else, his codefendant.[13] It is, of course, possible that defense counsel did not carefully examine the discovery provided. It is equally possible that he reasonably planned a defense of mistaken identification because he knew the Commonwealth's photographs would show a man of a different race committing one of the crimes with which the defendant was charged. It was prejudicial to permit the Commonwealth to amend its bill of particulars during the trial and, over the defendant's objection, to allege that the defendant committed a different crime at a different time at a different part of the Target store using a different person's stolen credit card. For this reason, we reverse the defendant's convictions of larceny and fraudulent use of a credit card related to the transaction using Elizabeth Spahn's Visa card at Target at 10:00 P.M. on the night in question.

*Separate indictments for the same crime.* The two remaining fraudulent use of a credit card charges each involve the same credit card, Elizabeth Spahn's Chase Mastercard. The bill of particulars for these indictments provided: "At approximately 10:17 p.m. on April 27th, 2004, the defendant possessed Elizabeth Spahn's Chase Master Card credit card, knowing that the credit card had been stolen earlier that night from Ms. Spahn's home, intending to use the credit card to fraudulently obtain goods and did fraudulently obtain $100.00 worth of goods at the Super Stop & Shop in the Liberty Tree Mall in Danvers, MA. . . . At approximately 10:25 p.m. on April 27th, 2004, the defendant possessed Elizabeth Spahn's Chase Master Card credit card, knowing that the credit card had been stolen earlier that night from Ms. Spahn's home, intending to use the credit card to fraudulently obtain goods and did fraudulently obtain $28.56 worth of goods at the Super Stop & Shop in the Liberty Tree Mall in Danvers, MA." Although the evidence would have warranted a finding that the defendant used that card in two separate transactions at the Stop & Shop, he can only be said to have received the card once.

As discussed *supra*, the defendant was charged, pursuant to

---

[13]The Commonwealth never argued a theory of joint venture as to any of the transactions.

G. L. c. 266, § 37C(*b*), with "receiv[ing] a credit card with the intent to use it, knowing said credit card had been taken by any act that would constitute larceny from the person, possession, custody or control of another without the cardholder's consent." Although the parties proceeded at various times during the trial as if other elements from other parts of the statute were necessary, the required elements for this fraudulent use charge were that the defendant, with intent to defraud, received a stolen credit card, knowing it to have been stolen.

"The traditional rule in Massachusetts, as embodied in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871) . . . , and its progeny, is that 'a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not.' " *Commonwealth* v. *Vick*, 454 Mass. 418, 431 (2009), quoting from *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002). In this case, the two charges were titled fraudulent use of a credit card, but, in fact, each alleged *receiving* a stolen credit card which does not require proof of actual use of the credit card. Therefore, one of the two convictions of violation of § 37C(*b*) must be vacated, because the defendant cannot be punished separately for two transactions with the stolen card, where the gravamen of the offense was his receipt of the card. See *Commonwealth* v. *Jones*, 441 Mass. 73, 76 (2004) ("[t]he actual criminal acts alleged are wholly irrelevant . . . rather, the elements of the crime[ ] charged are considered objectively, abstracted from the facts").

*Jury instructions.* The jury instructions given by the judge at the end of the trial on the felony charges included all of the elements of § 37C(*b*).[14] However, in addition, the judge also instructed the jury that the Commonwealth had to prove additional elements not found in this subsection of the statute,

_____

[14]"[T]he Commonwealth has to prove the following elements to you beyond a reasonable doubt. Number one, that the [d]efendant knew that the credit card was stolen; that he had a stolen credit card and the [d]efendant knew that it was stolen. Number two, that the [d]efendant received the stolen credit card, he had it in his possession. Number three, that the Defendant intended to use the stolen credit card and did so; that is he didn't mistakenly use the credit card, he intended to use it and he did so. And number four, that the [d]efendant received goods with that credit card, that that credit card was utilized without authorization and that he had — the Defendant had at the time the intent to defraud."

specifically, that, in addition to receiving the stolen credit card, the defendant intended to use it, and did so, and that he received goods using it. Adding additional elements to the Commonwealth's burden of proof, while error, cannot reasonably be said to have prejudiced the defendant in the circumstances of this case. Nor, despite the defendant's argument to the contrary, was the judge required to list a requirement that the Commonwealth prove that the value of any goods obtained exceeded $250 because that element is not part of § 37C(*b*).

*Prior bad act evidence.* Over the defendant's objection, the judge permitted the Commonwealth to introduce evidence that linked the defendant, circumstantially, to the theft of the credit cards and other items from apartments in Harbor Towers in Boston a few hours before the cards were used in Danvers. After balancing the probative value and any unfair prejudice to the defendant, the judge found that the evidence was probative on the issue whether the credit cards were stolen and whether the defendant knew they were stolen, pointing out that "if they can prove that he was the one who took them, . . . that's very strong evidence." He gave an appropriate limiting instruction during the testimony of the credit card's owner and again, at the request of the defendant, at the end of the trial. We see no abuse of discretion. See *Commonwealth* v. *Holliday*, 450 Mass. 794, 815, cert. denied sub nom. *Mooltrey* v. *Massachusetts*, 129 S. Ct. 399 (2008); *Commonwealth* v. *Sapoznik*, 28 Mass. App. Ct. 236, 244 (1990) ("Knowledge relevant to proof of the crime charged is a recognized exception to the rule against admission of evidence of prior bad acts"). See also Mass. G. Evid. § 404(b) (2010).

*Identification testimony.* On appeal, for the first time, the defendant objects to the testimony of a Harbor Towers security official comparing photographs given to him by a private investigator to those obtained from Target and Stop & Shop, which he described as a match. The defendant makes a similar claim about the testimony from the security officer of Stop & Shop and the private investigator who obtained the photographs. The testimony of the private investigator was admitted over the defendant's objection.

The photographs of the defendant and codefendant were admitted in evidence, as were the security tapes, which were played

for the jury. None of the challenged witnesses explicitly testified that the images in any of the exhibits were the defendant, although each testified that he believed that the photographs were of the same individuals. The only person who testified that the defendant was the person depicted in the Harbor Towers security tape, and in the Stop & Shop security tape, was Diane Robinson, the defendant's former girlfriend and the mother of his child.

Robinson explained that she had an eight-year relationship with the defendant and that, among other things, she recognized his clothing and the way that he wore his jewelry. She also testified that, as did the man in the photographs, the defendant always wore glasses. The defendant did not object to her testimony, and he does not challenge it on appeal.

In *Commonwealth* v. *Pleas*, 49 Mass. App. Ct. 321 (2000), this court described factors to be used in determining the admissibility of testimony purporting to identify individuals in surveillance photographs. "The quality of the photographic images matters; if they are neither 'so unmistakably clear or so hopelessly obscure that the witness is not better-suited than the jury to make the identification,' then lay opinion testimony may be admitted. *United States* v. *Jackman*, 48 F.3d 1, 5 (1st Cir. 1995). . . . The level of familiarity of the witness with the person shown in the photograph is also a factor. . . . The courts also consider whether the defendant is disguised in the photograph or has changed his appearance since the time of the crime." *Id.* at 325-326. In sum, "[a] witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *Id.* at 326, quoting *United States* v. *Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984). In addition, identification testimony from a police officer or other law enforcement official may create the risk of unfair prejudice. *Id.* at 327. Cf. *Commonwealth* v. *Austin*, 421 Mass. 357, 365-366 (1995). See also Mass. G. Evid. § 701 (2010).

Robinson was properly permitted to identify the defendant as the man in the security photographs. She had known him well for many years, and she had particular knowledge about his clothes and jewelry that the jury did not have. There were no

circumstances that made her testimony unfairly prejudicial and the photographs, at least those that appear in the record, are not particularly clear.

Nor did the judge err in permitting the jury to view Jose Colon, and his distinctive tattoo, standing with the defendant for the purpose of comparing them to the images on the photographs. It was similarly appropriate to permit Robinson to identify Colon as a man she knew as "Joey," the defendant's brother-in-law. Finally, assuming without deciding that it was error to permit the comparison testimony of the security officers and the private investigator, any error was not prejudicial and was cumulative of other evidence. The jurors had the items at issue and thus were in a position to decide themselves whether the individual depicted was the same in all of the exhibits.

*Comments to a witness.* The defendant argues for the first time on appeal that the judge's exchanges with the witness, Elizabeth Spahn, to which he did not object, exhibited a bias toward her.[15] We recognize that "any judicial [conduct] is likely to be accorded substantial weight by the jury." *Commonwealth* v. *Johnson*, 429 Mass. 745, 752 (1999), quoting from *Commonwealth* v. *Sylvester*, 388 Mass. 749, 751 (1983). Nevertheless, the defendant did not challenge the witness's credibility at trial; indeed, he conceded it.[16] In addition, the judge gave careful and thorough instructions to the jury at the end of the case.[17] The judge's comments, even if better left unsaid, at least in front of the jury, viewed in the context of the entire trial, could not have created a risk of a miscarriage of justice. See *Commonwealth* v. *Mello*, 420 Mass. 375, 392-393 (1995); *Commonwealth* v. *Johnson*, 429 Mass. at 752-753; *Commonwealth* v. *Gomes*, 54 Mass. App. Ct. 1, 6-7 (2002).

---

[15] In sum, the exchange involved a conversation about the fact that the judge and the witness both taught at a certain law school, with the witness teaching constitutional law. In addition, during the testimony, the judge made several other comments, including expressing concern over whether her stolen credit cards had been canceled.

[16] In closing, counsel acknowledged that Elizabeth Spahn and her neighbors were "some very nice people [who] got ripped off."

[17] Among other things, he told them that the members of the jury "were the only ones who decide what's the credible, the believable evidence" and that they should not conclude from anything that he had said or done that he had "made up his mind about the case because they would be wrong."

*Conclusion.* The judgments on the indictments that charge fraudulent use of a credit card at the Target store and larceny of property from the Target store are reversed and the guilty findings are set aside. The judgment on the indictment charging fraudulent use of a credit card at the Super Stop & Shop at approximately 10:25 P.M. on April 27, 2004, to obtain goods worth $28.56 is reversed and the guilty finding is set aside. Judgments on these indictments are to enter for the defendant. The remaining judgments are affirmed.

*So ordered.*